**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| TRINITY BIAS, JAIME CARDENAS, CHRISTOPHER HOLMES, and ROBERT SHAW, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ELEPHANT INSURANCE COMPANY, ELEPHANT INSURANCE SERVICES, LLC, and PLATINUM GENERAL AGENCY, INC. d/b/a APPARENT INSURANCE, <br><br> Defendants. | Civil Action No. 3:22-cv-00487-JAG |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................... 1

II.     PLAINTIFFS' FACTUAL ALLEGATIONS................................................................... 2

III.    LEGAL ARGUMENT................................................................................................ 4

    A.  Plaintiffs Lack Article III Standing to Pursue Their Claims........................................ 4

        1.  Plaintiffs Bear the Burden to Show that Standing Exists ..................................... 5

        2.  Plaintiffs Have Failed to Properly Allege Concrete Injuries-in-Fact...................... 5

            a.  Risk of Future Harm, Without More, Is Not a Concrete Injury-in-Fact in a Case for Monetary Damages............................................................................ 6

            b.  Plaintiffs Have Failed to Plead Facts Showing that They Suffered Concrete Injuries in Mitigating Impact of Incident.......................................................... 9

            c.  Plaintiffs Have Failed to Plead Facts Showing that They Suffered Concrete Injuries in the Form of Emotional Distress...................................................... 10

            d.  Plaintiffs Have Failed to Plead Facts Showing that They Suffered Concrete Injuries through Lost Value of Personal Information.................................... 11

            e.  Plaintiffs Do not Have Article III Standing to Seek Injunctive Relief ........... 12

    B.  Plaintiffs Have Failed to State Claims Upon Which Relief Can Be Granted............. 13

        1.  Plaintiffs Have Failed to State a Claim for Violation of the Driver Privacy Protection Act ................................................................................................... 14

        2.  Plaintiffs Have Failed to State a Claim for Negligence....................................... 18

        3.  Plaintiffs Have Failed to State a Claim for Negligence *Per Se* ........................... 20

        4.  Plaintiffs Have Failed to State a Claim for Unjust Enrichment............................ 21

        5.  Plaintiffs Have Failed to State a Claim for Violation of the Texas Deceptive Trade Practices and Consumer Protection Act............................................................. 23

        6.  Plaintiffs Have Failed to State a Claim for Violation of the Illinois Consumer Fraud Act ........................................................................................................ 24

        7.  Plaintiffs Have Failed to State a Claim for Violation of the Illinois Uniform Deceptive Trade Practices Act.......................................................................... 25

8.   Plaintiffs Have Failed to State a Claim for Declaratory and Injunctive Relief .... 26

C.  In the Alternative, the Court Should Strike Impertinent and Immaterial Allegations from the Consolidated Complaint..................................................................................... 27

IV.    CONCLUSION........................................................................................................... 28

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Vertafore, Inc.*,
  28 F.4th 613 (5th Cir. 2022) ......................................................................................... 16

*Allen v. Vertafore, Inc.*,
  2021 WL 3148870 (S.D. Tex. June 14, 2021) ............................................................. 16

*Antman v. Uber Tech., Inc.*,
  2015 WL 6123054 (N.D. Cal. Oct. 19, 2015) .............................................................. 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................... 14

*Baysal v. Midvale Indem. Co.*,
  2022 WL 1155295 (W.D. Wisc. Apr. 19, 2022) .......................................................... 12

*Beck v. McDonald*,
  848 F.3d 262 (4th Cir. 2017) .......................................................................... 5, 8, 9, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................... 14

*Benson v. Fannie May Confections Brands, Inc.*,
  944 F.3d 639 (7th Cir. 2019) ....................................................................................... 24

*Blue Ridge Serv. Corp.*,
  624 S.E.2d 55 (Va. 2006) ............................................................................................ 19

*Bohnak v. Marsh & McLennan Cos., Inc.*,
  580 F. Supp. 3d 21 (S.D.N.Y. 2022) ..................................................................... 19, 21

*Bus. Staffing, Inc. v. Jackson Hot Oil Serv.*,
  401 S.W.3d 224 (Tex. App. 2012) ............................................................................... 23

*Clothiers, Inc.*,
  761 F.3d 732 (7th Cir. 2014) ....................................................................................... 24

*Carter v. William Sommerville & Son, Inc.*,
  584 S.W.2d 274 (Tex. 1979) ........................................................................................ 20

*Chabraja v. Avis Rent A Car* Sys.*, Inc.*,
  549 N.E.2d 872 (Ill. App. Ct. 1989) ............................................................................ 25

iii

*City of Neodesha v. BP Corp. N. Am., Inc.*,
 334 P.3d 830 (Kan. Ct. App. 2014) ...................................................................... 21

*Clapper v. Amnesty Int'l USA*,
 568 U.S. 398 (2013) ........................................................................................... 9

*Ely v. Hitchcock*,
 58 P.3d 116 (Kan. Ct. App. 2002) ....................................................................... 20

*Enslin v. The Coca-Cola Co.*,
 136 F. Supp. 3d 654 (E.D. Pa. 2015)................................................................... 16

*Eun Bok Lee v. Ho Chang Lee*,
 411 S.W.3d 95 (Tex. App. 2013) ......................................................................... 21

*Everhart v. Colonial Pipeline Co.*,
 2022 WL 3699967 (N.D. Ga. July 22, 2022) ....................................................... 19

*Fox v. Iowa Health Sys.*,
 399 F. Supp. 3d 780 (W.D. Wis. 2019)................................................................. 25

*Francis v. Giacomelli*,
 588 F.3d 186 (4th Cir. 2009) .............................................................................. 13

*Gann v. Anheuser-Busch, Inc.*,
 394 S.W.3d 83 (Tex. App. 2012) ......................................................................... 19

*Garner v. Boehringer Ingelheim Pharmaceuticals, Inc.*,
 888 F. Supp. 2d 911 (S.D. Ill. 2012) ................................................................... 20

*General Assur. of America, Inc. v. Overby–Seawell*,
 533 Fed. App'x. 200 (4th Cir. 2013) ................................................................... 18

*Gilman & Bedigan, LLC v. Sackett*,
 337 F.R.D. 113 (D. Md. 2020) ............................................................................ 27

*Greenstein v. Noblr Reciprocal Exchange*,
 585 F. Supp. 3d 1220 (N.D. Cal. 2022)............................................................... 12

*Griffin v. Dep't of Labor Fed. Credit Union*,
 912 F.3d 649 (4th Cir. 2019) ............................................................................... 4

*Guvenoz v. Target Corp.*,
 30 N.E.3d 404 (Ill. App. Ct. 2015)...................................................................... 19

iv

*Halterman v. Radisson Hotel Corp.*,
259 Va. 171 (2000) ........................................................................................................ 21

*Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*,
892 F.3d 613 (4th Cir. 2018) ........................................................................................... 8

*Huynh v. Walmart Inc.*,
30 F.4th 448 (5th Cir. 2022) ........................................................................................... 23

*I.C. v. Zynga, Inc.*,
2022 WL 2252636 (N.D. Cal. Apr. 29, 2022) .............................................................. 13

*In re Capital One Consumer Data Sec. Breach Litig.*,
488 F. Supp. 3d 374 (E.D. Va. 2020) ............................................................................ 11

*In re Michaels Stores Pin Pad Litig.*,
830 F. Supp. 2d 518 (N.D. Ill. 2011) ............................................................................ 25

*In re SuperValu, Inc. Customer Data Sec. Breach Litig.*,
2018 WL 1189327 (D. Minn. Mar. 7, 2018) ................................................................. 20

*In re USAA Data Sec. Breach Litig.*,
2022 WL 3348527 (S.D.N.Y. Aug. 12, 2022) ........................................................ 17, 18

*Irwin v. Jimmy John's Franchise, LLC*,
175 F. Supp. 3d 1064 (C.D. Ill. 2016) .......................................................................... 22

*Kerns v. United States*,
585 F.3d 187 (4th Cir. 2009) ........................................................................................... 5

*Kim v. Carter's Inc.*,
598 F.3d 362 (7th Cir. 2010) ......................................................................................... 24

*Krottner v. Starbucks Corp.*,
406 F. App'x 129 (9th Cir. 2010) .................................................................................. 20

*Legg v. Leaders Life Ins. Co.*,
2021 WL 5772496 (W.D. Okla. Dec. 6, 2021) .............................................................. 9

*Liston v. King.com, Ltd.*,
254 F. Supp. 3d 989 (N.D. Ill. May 23, 2017) .............................................................. 24

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ......................................................................................................... 5

v

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ...................................................................................................... 26

*Miller v. Kim Tindall & Assocs., LLC*,
  633 S.W.3d 102 (Tex. App. 2021) ................................................................................. 23

*Milton v. IIT Research Inst.*,
  138 F.3d 519 (4th Cir.1998) .......................................................................................... 18

*Mulligan v. QVC, Inc.*,
  888 N.E.2d 1190 (Ill. App. Ct. 2008) ............................................................................ 24

*Nat'l Union Fire Ins. Co. of Pittsburgh v. DiMucci*,
  34 N.E.3d 1023 (Ill. App. Ct. 2015) ............................................................................. 21

*Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*,
  879 F.3d 339 (D.C. Cir. 2018)......................................................................................... 7

*Papasan v. Allain*,
  478 U.S. 265 (1986) ...................................................................................................... 14

*Patterson v. Cowley Cnty.*,
  413 P.3d 432 (Kan. 2018)............................................................................................... 19

*Perdue v. Hy-Vee, Inc.*,
  455 F. Supp. 3d 749 (C.D. Ill. 2020) ...................................................................... 22, 25

*Popp v. Cash Station, Inc.*,
  613 N.E.2d 1150 (Ill. App. Ct. 1992).............................................................................. 25

*Reid v. Unilever U.S., Inc.*,
  964 F. Supp. 2d 893 (N.D. Ill. 2013)............................................................................. 25

*Reno v. Condon*,
  528 U.S. 141 (2000) ...................................................................................................... 14

*Rudy v. Family Dollar Stores, Inc.*,
  2022 WL 345081 (N.D. Ill. Feb. 4, 2022) ................................................................... 24

*Schmidt v. Household Fin. Corp., II*,
  661 S.E.2d 834 (Va. 2008) ........................................................................................... 22

*Siegel v. Shell Oil Co.*,
  612 F.3d 932 (7th Cir. 2010) ........................................................................................ 24

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ................................................................................................. 5, 6

*Stamat v. Grandizio Wilkins Little & Matthews, LLP*,
   2022 WL 3919685 (D. Md. Aug. 31, 2022) ................................................. 8, 9, 10, 11

*Taylor v. Acxiom Corp.*,
   612 F.3d 325 (5th Cir. 2010) ........................................................................................ 15

*TransUnion*, *LLC v. Ramirez*,
   141 S. Ct. 2190 (2021)......................................................................................... Passim

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ...................................................................................................... 6

## Statutes

18 U.S.C. § 2721................................................................................................... 14, 15

18 U.S.C. § 2722........................................................................................................ 14

28 U.S.C. § 2201........................................................................................................ 26

28 U.S.C. § 2202........................................................................................................ 26

## Rules

Federal Rule of Civil Procedure 12(b)(1) ............................................................. 1, 4, 5

Federal Rule of Civil Procedure 12(b)(6) ............................................................. 1, 2, 13

Federal Rule of Civil Procedure 12(f) ................................................................... 2, 27

Defendants Elephant Insurance Company, Elephant Insurance Services, LLC, and Platinum General Agency, Inc. d/b/a Apparent Insurance (collectively, "Elephant"), submit this Memorandum of Law in support of their Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I.    INTRODUCTION

Elephant was the victim of a cyberattack. Unauthorized criminal actors infiltrated Elephant's computer system where certain personal information, including driver's license numbers, pertaining to Elephant customers and others who may have sought insurance quotes from Elephant was stored.

Plaintiffs Trinity Bias, Jaime Cardenas, Christopher Holmes, and Robert Shaw received notice from Elephant that their personal information may have been accessible during this cyberattack. None of these Plaintiffs, however, have pled any facts in their Consolidated Complaint that show they suffered any harm from the potential exposure of their information. There are no facts in the Consolidated Complaint that show any of these four individuals experienced identity theft, fraud, or any other concrete injury resulting from this incident. Accordingly, none of them has standing to pursue this lawsuit under Article III of the United States Constitution. The Complaint should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

Even if Plaintiffs had established standing, they have nevertheless failed to plead sufficient factual material that would establish the requisite elements for any of the asserted causes of action. In particular, Plaintiffs have failed to show that a cyberattack by an unknown criminal actor on Elephant's computer network could be considered a "knowing disclosure" of personal information by Elephant in violation of the federal Driver's Privacy Protection Act ("DPPA"). To get around this pleading failure, Plaintiffs focus on Elephant's online insurance quoting tool to suggest that

the cybercriminals manipulated this platform in order to conduct the attack. This is a distraction. There are no facts in the Complaint—and no evidence—that Elephant's online quoting platform had anything to do with this data security incident. An unauthorized attack on a computer system is not a "knowing disclosure" in violation of the DPPA, and Plaintiffs can point to no facts that suggest otherwise. Plaintiffs have similarly failed to establish the elements for each of the other causes of action in the Complaint. Each of those claims should also be dismissed under Rule 12(b)(6).

In the event that the Court does not dismiss the Complaint in its entirety, it should strike the impertinent and immaterial paragraphs relating to identity theft and cybercrime that have nothing to do with the facts of this case pursuant to Rule 12(f).

## II.    PLAINTIFFS' FACTUAL ALLEGATIONS[1]

Elephant is headquartered in Henrico, Virginia, and provides insurance products and services. *Consolidated Class Action Complaint*, Sept. 14, 2022, ¶ 22, ECF No. 18. Licensed to do business in Georgia, Illinois, Indiana, Maryland, Ohio, Tennessee, Texas, and Virginia, Elephant sells automobile and other types of insurance. *Id*. ¶¶ 15, 16, 17. To provide its insurance products, Elephant collects various types of personal information from customers and potential customers through certain processes, including "online applications through a quote website, other application processes, consumer report information, Departments of Motor Vehicles, transaction information, and website information." *Id*. ¶ 23.

In April 2022, Elephant identified unusual activity on its computer network. *Id*. ¶ 26. Elephant "promptly undertook a comprehensive investigation, working with third-party specialists, to secure [its] systems and to confirm the nature and scope of the incident, as well as

---

[1] For the purposes of this motion only, all well-pled facts of the Complaint are treated as true. However, Elephant does not admit the truth of any allegations in the Complaint and cites them here solely for purposes of this motion.

any impact to information on our network." *Id*. The investigation determined that "certain consumer information may have been viewed on or copied from [Elephant's] network between March 26, 2022, and April 1, 2022." *Id*. The types of information that may have been impacted included names, driver's license numbers, and dates of birth. *Id*. ¶ 7. Elephant then "undertook a comprehensive review" to determine whose information may have been affected in this incident. In addition to reporting this incident to federal law enforcement and relevant state regulatory agencies, Elephant provided notice to 2,762,687 individuals that their information may have been affected in the incident. *Id*. ¶¶ 7, 26. Plaintiffs were among these notified individuals. *Id*. ¶ 27. Elephant had possession of Plaintiffs' personal information because each of them was either "a current or previous Elephant Insurance customer or [Elephant] received [their] information as part of providing a quote for auto or other insurance coverage." *Id*. ¶¶ 26, 27.

None of the Plaintiffs alleges that he or she has been the victim of identity theft, fraud, or any other already materialized harm stemming from the Elephant data security incident. Instead, each of them alleges that he or she is at risk of an unmaterialized harm that may or may not result from future misuse of their personal information by criminal actors. For example, Plaintiff Cardenas, who had previously sought an online insurance quote from Elephant, alleges that "his driver's license number was for sale on the dark web." Compl. ¶¶ 82-83. He learned of this fact because he signed up for credit monitoring after he was "part of the Equifax breach." *Id*. ¶ 83. He does not allege that anyone has procured his driver's license number from the dark web or that anyone has misused his information to commit identity theft or fraud.

Similarly, Plaintiff Bias, who "may have sought an insurance quote" from Elephant's online tool, alleges that she is "at heightened risk for financial fraud, future identity theft, [and] other forms of fraud," but she does not allege any facts showing that she has already been a victim

3

of financial fraud, identity theft, or other forms of fraud. *Id*. ¶¶ 89, 93. Plaintiff Holmes alleges that, on June 21, 2022, he "received notice from his identity theft protection service that his driver's license number was 'found' on the dark web," but he does not allege that anyone has misused his personal information in any way to commit identity theft or fraud. *Id*. ¶ 98. He instead alleges that he has noticed "an uptick in spam text and telephone calls," but he does not plead facts showing how those texts and calls resulted in any injury. ¶ 97. Nor does he explain how a stolen driver's license can result in an increase in text messages and telephone calls. Finally, Plaintiff Shaw alleges generally, without any specific factual support, that it is likely identity theft "will result from a compromised driver's license." *Id*. ¶ 112. He does not allege any facts showing that he has already experienced identity theft, fraud, or any other type of harm. *Id*.

Plaintiffs seek to represent a nationwide class consisting of "[a]ll persons in the United States whose PI[2] was compromised in the Unauthorized Data Disclosure[3] announced by Defendants on or near May 6, 2022," as well as state subclasses for Illinois and Texas residents. *Id*. ¶¶ 132-134 (footnote added).

## III.    LEGAL ARGUMENT

### A.    Plaintiffs Lack Article III Standing to Pursue Their Claims

A motion to dismiss for lack of standing is properly brought under Federal Rule of Civil Procedure 12(b)(1). *See Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 652-53 (4th Cir. 2019). In determining whether a plaintiff lacks standing, a court must determine if the complaint fails to allege facts upon which subject matter jurisdiction can be based. *Beck v.*

---

[2] Plaintiffs define Personal Information ("PI") as "a person's Social Security number, driver's license number, name, address, telephone number, and medical or disability information." Compl. ¶ 8.

[3] Plaintiffs define the data security incident that Elephant experienced between March 26 and April 1, 2022, as the "Unauthorized Data Disclosure." Compl. ¶ 25.

*McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (citing *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). Here, the Consolidated Complaint fails to plead factual material sufficient to show that Plaintiffs have suffered concrete injuries-in-fact required to give rise to standing under Article III of the Constitution. The Court should dismiss the Complaint in its entirety pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

### 1.      Plaintiffs Bear the Burden to Show that Standing Exists

Article III limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. Art. III, § 2. To have standing under Article III, a plaintiff must show each of the following elements: (1) an injury-in-fact; (2) a traceable causal connection between the injury and the conduct complained of; and (3) that it is likely, as opposed to merely speculative, that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "Standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Id*. at 560. "As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *TransUnion, LLC v. Ramirez,* 141 S. Ct. 2190, 2207 (2021). A plaintiff must demonstrate standing "with the manner and degree of evidence required at the successive stages of the litigation," including at the pleading stage. *Lujan*, 504 U.S. at 561.

### 2.      Plaintiffs Have Failed to Properly Allege Concrete Injuries-in-Fact

To have standing to sue, a plaintiff must have suffered an injury-in-fact that is concrete, particularized, and actual or imminent, not merely conjectural or hypothetical. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). As for concreteness, "[a] concrete injury must be *de facto*; that is, it must actually exist." *Id.* at 340 (internal citations and quotation marks omitted). In other words, it must be "real, and not abstract." *Id*. (internal

5

citations and quotation marks omitted). "Under Article III, federal courts do not adjudicate hypothetical or abstract disputes." *TransUnion*, 141 S. Ct. at 2203. For that reason, allegations of "possible future injury" are not sufficient to satisfy Article III. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

By proffering nothing but speculative and hypothetical theories of injury, Plaintiffs have not met their burden to properly plead facts showing that they have suffered concrete injuries-in-fact. They, therefore, lack standing under Article III.

### a. Risk of Future Harm, Without More, Is Not a Concrete Injury-in-Fact in a Case for Monetary Damages

Plaintiffs have failed to carry their burden to establish standing to pursue damages under Article III. Because risk of future harm, standing alone, does not give rise to Article III standing in a case for damages, Plaintiffs' claims should be dismissed.

None of the four named Plaintiffs alleges that he or she was the victim of identity theft or any other already materialized harm. Plaintiffs Cardenas and Holmes allege that their driver's license numbers are available on the dark web, but information being available on the dark web is not the same as criminal actors actually using that information to commit identity theft or fraud. Plaintiffs have not pled any facts showing that the latter has occurred here. Without actual misuse of personal information, the alleged injuries of Plaintiffs Cardenas and Holmes fare no better than the alleged injuries of Plaintiffs Bias and Shaw. None of them can show that they have been injured in the form of an already materialized harm resulting from the Elephant data security incident.

Unable to allege any data misuse that has materialized into actual injury, Plaintiffs are left to claim that they have been placed at an "increased risk of fraud and identity theft[.]" Compl. ¶ 28. This abstract risk of future harm, without more, does not constitute an injury-in-fact in a case for damages under Article III.

6

In *TransUnion*, where a class of 8,185 individuals brought claims against TransUnion, a credit reporting agency, for violation of the Fair Credit Reporting Act, the Supreme Court clarified the standard that a plaintiff must meet when seeking to establish standing on the basis of a potential future injury. 141 S. Ct. at 2200. Although TransUnion had processed false and defamatory credit reports for all class members, it only disclosed the reports of 1,835 class members to third-party businesses. *Id*. The Supreme Court found that those 1,835 class members had standing to pursue their claims against TransUnion for failure to employ reasonable procedures. *Id*. TransUnion had not disclosed the inaccurate reports of the remaining 6,332 class members to any third-party businesses, and although those class members contended that they were at risk of future disclosure, the Supreme Court found that they lacked standing. *Id*.

In assessing whether the risk of future harm can constitute an injury-in-fact under Article III, the Supreme Court distinguished between claims seeking injunctive relief and claims seeking monetary damages, finding that in a suit for damages, the mere risk of future harm, without more, cannot qualify as a concrete harm sufficient to establish standing. *Id*. at 2211. Instead, the Supreme Court held that a plaintiff must show that the harm actually materialized. *Id*. In reaching its conclusion, the Supreme Court likened the statutory violation underlying the *TransUnion* plaintiffs' claimed injuries to the common law tort of defamation and explained that "there is 'no historical or common-law analog where the mere existence of inaccurate information, absent dissemination, amounts to concrete injury.'" *Id*. at 2209 (quoting *Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*, 879 F.3d 339, 344 (D.C. Cir. 2018)). In rejecting the argument that risk of future disclosure of an inaccurate and defamatory credit report could serve as a concrete harm constituting an injury-in-fact satisfying Article III, the Supreme Court agreed with the argument TransUnion advanced:

> [I]f an individual is exposed to a risk of future harm, time will eventually reveal whether the risk materializes in the form of actual harm. If the risk of future harm materializes and the individual suffers a concrete harm, then the harm itself, and not the pre-existing risk, will constitute a basis for the person's injury and for damages. If the risk of future harm does *not* materialize, then the individual cannot establish a concrete harm sufficient for standing[.]

*TransUnion*, 141 S. Ct. at 2211 (emphasis in original).

The Fourth Circuit has not yet addressed the *TransUnion* holding in the context of a data breach class action. Previously, however, the Fourth Circuit had also held that a mere compromise of personal information, without more, fails to satisfy the injury-in-fact element in the absence of an identity theft. *Beck*, 848 F.3d at 274 (finding plaintiffs' "contention of an enhanced risk of future identity theft too speculative" to confer standing); *see also Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 622 (4th Cir. 2018) (finding that, while mere compromise of information does not give rise to standing, plaintiffs had sufficiently alleged injury-in-fact where they "allege that they have already suffered actual harm in the form of identity theft and credit card fraud"); *Stamat v. Grandizio Wilkins Little & Matthews, LLP*, No. 22-747, 2022 WL 3919685, at *6 (D. Md. Aug. 31, 2022) (dismissing complaint for lack of standing where plaintiff "alleges no actual misuse of his personal data" and "[a]ll potential harms and misuses of his data remain hypothetical").

The Plaintiffs have fallen short. None of them has alleged facts showing identity theft or fraud. Even if Plaintiffs argue that the presence of their driver's license numbers on the dark web heightens the risk of identity theft and fraud, a concrete injury for standing purposes does not exist until that identity theft or fraud actually occurs. *See TransUnion*, 141 S. Ct. at 2211 ("If the risk of future harm does *not* materialize, then the individual cannot establish a concrete harm sufficient for standing. . . .") (emphasis in original)

8

### b. Plaintiffs Have Failed to Plead Facts Showing that They Suffered Concrete Injuries in Mitigating Impact of Incident

Without offering any factual detail, Plaintiffs also contend that they have suffered injury in the form of "out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft and fraud." Compl. ¶ 127. This unsupported allegation is also insufficient to establish Article III standing.

It is well established that, where standing does not otherwise exist, a plaintiff cannot "manufacture standing" simply by "incur[ring] certain costs as a reasonable reaction to a risk of harm." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). That is exactly what Plaintiffs are attempting to do with this vague and unsupported allegation about out-of-pocket mitigation costs. "Simply put, these self-imposed harms cannot confer standing." *Beck*, 848 F.3d at 276-77 (internal citations omitted); *Stamat*, 2022 WL 3919685, at *6 (declining to find standing based on mitigation costs where plaintiff's "actions constitute self-imposed mitigation measures to protect against a non-imminent harm"); *Legg v. Leaders Life Ins. Co.*, No. 21-655, 2021 WL 5772496, at *7 (W.D. Okla. Dec. 6, 2021) ("Thus, while it may have been reasonable to take some steps to mitigate the risks associated with the data breach, those actions cannot create a concrete injury.").

Even if self-imposed mitigation costs could confer standing in the absence of actual identity theft or fraud, Plaintiffs have nevertheless failed to plead any facts showing that they incurred out-of-pocket costs. There are no allegations in the Complaint regarding products or services that Plaintiffs purchased or what they may have paid for those products or services. Indeed, the two Plaintiffs who allegedly use a credit monitoring and identity theft protection service, Cardenas and Holmes, were using it *before* the Elephant data security incident. *See* Compl. ¶¶ 83, 98. They did not purchase credit monitoring in an effort to mitigate against this breach. Plaintiff Shaw even alleges that he specifically declined to use a credit monitoring service. *See id.* ¶ 112. In short, there

9

are no allegations in the Complaint that Plaintiffs incurred *any* out-of-pocket costs in order to mitigate the effects of the Elephant data security incident. Thus, even if self-imposed mitigation costs could confer standing, Plaintiffs have failed to support that theory with factual allegations.

### c. Plaintiffs Have Failed to Plead Facts Showing that They Suffered Concrete Injuries in the Form of Emotional Distress

In addition to the risk of future harm, Plaintiffs include unspecific and boilerplate allegations that they have suffered "anxiety" and "emotional distress" as a result of the data security incident. Compl. ¶¶ 101, 114, 182. These conclusory allegations do not rise to the level of a separately incurred concrete harm as contemplated by the Supreme Court in *TransUnion*.

The Supreme Court noted in *TransUnion* that it might be conceivable for a plaintiff to assert, in addition to the risk of future harm, an "emotional or psychological harm . . . by analogy to the tort of intentional infliction of emotional distress." *TransUnion*, 141 S. Ct. at 2211 n.7. The Court, however, took "no position on whether or how such an emotional or psychological harm could suffice for Article III purposes." *Id.* The Court was not referencing generic and unexplained allegations of "anxiety" and "emotional distress" like Plaintiffs recite in the Complaint. In *Beck*, the Fourth Circuit "reject[ed] the Plaintiffs' claim that 'emotional upset' and 'fear [of] identity theft and financial fraud' resulting from the data breaches are 'adverse effects' sufficient to confer Article III standing." 848 F.3d at 272-273 (declining to conclude that "bare assertions of emotional injury are sufficient to confer Article III standing"); *see also Stamat*, 2022 WL 3919685, at *6 (declining to find Article III standing based on emotional injury where plaintiff "merely states that he has 'sustained emotional distress' and "'suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy,' without alleging any facts to support these assertions). Plaintiffs have similarly

10

failed to plead any facts in support of their allegations of "anxiety" and "emotional distress." These conclusory allegations cannot confer standing.

### d. Plaintiffs Have Failed to Plead Facts Showing that They Suffered Concrete Injuries through Lost Value of Personal Information

Without providing any factual assertions about the value of their personal information, Plaintiffs also claim injury in the form of "lost value of the [personal information]." Compl. ¶ 190. This, too, is an entirely speculative and hypothetical injury that does not provide Plaintiffs with standing.

Although some courts have recognized diminution in the value of personal information as a cognizable injury for Article III purposes, Plaintiffs have not pled any facts in support of that theory. Confronted with similarly conclusory allegations in a data breach class action, another court in this district explained that "Plaintiffs have . . . failed to plausibly allege damages based on the lost or reduced value of their PII." *In re Capital One Consumer Data Sec. Breach Litig*., 488 F. Supp. 3d 374, 404 (E.D. Va. 2020). "Even assuming that Plaintiffs' PII has monetary value, Plaintiffs do not allege any facts explaining *how* their PII became less valuable as a result of the breach. For instance, there are no allegations that Plaintiffs attempted to sell their information and were refused a sale because of or related to their PII's prior exposure arising from the Data Breach." *Id*. at 403 (emphasis in original). Although Plaintiffs contend that stolen driver's license numbers have value on the black market, "[t]he fact that someone else can profit from having access to [their] information does not necessarily lower the value of that information to" Plaintiffs. *Stamat*, 2022 WL 3919685, at *7.

Plaintiffs have not alleged any facts regarding the change in value of their personal information, and they, therefore, cannot establish standing by claiming that the value of that information has decreased.

### e. Plaintiffs Do not Have Article III Standing to Seek Injunctive Relief

Much as they lack Article III standing to seek monetary damages, Plaintiffs also lack Article III standing to pursue the declaratory and injunctive relief they seek in their eighth cause of action.

As noted above, none of the Plaintiffs have suffered identity theft, fraud, or any other already materialized harm. They instead seek relief for the risk of future harm. As the Supreme Court explained in *TransUnion*, a plaintiff may rely on a potential future injury to establish standing to seek "forward-looking" injunctive relief, "at least so long as the risk of harm is sufficiently imminent and substantial." 141 S. Ct. at 2210 (internal citations omitted). Plaintiffs have not pled facts that show they are at a "substantial and imminent" risk of identity theft, nor have they identified any "forward-looking" relief that would potentially alleviate any purported risk.

First, Plaintiffs have not pled any facts that show they are at an imminent and substantial risk of suffering identity theft or fraud. In fact, in examining similar data breach scenarios, courts have "distinguished the disclosure of driver's license numbers from" the disclosure of more sensitive personal information that could lead to a heightened risk of identity theft, "concluding that the risks associated with the former are not sufficiently imminent to satisfy Article III standing." *Baysal v. Midvale Indem. Co*., No. 21-394, 2022 WL 1155295, at *2 (W.D. Wisc. Apr. 19, 2022) (holding "that the risk of harm posed by the disclosure of driver's license numbers is not imminent"); *see also Greenstein v. Noblr Reciprocal Exchange*, 585 F. Supp. 3d 1220, 1228 (N.D.

12

Cal. 2022) (holding that plaintiffs cannot rely on the sensitivity of personal information to establish an imminent threat of future harm because of the low sensitivity of names and driver's licenses numbers); *Antman v. Uber Tech., Inc*., No. 15-1175, 2015 WL 6123054, at *11 (N.D. Cal. Oct. 19, 2015) (holding plaintiff's "allegations are not sufficient [to show imminent risk of identity theft] because his complaint alleges only the theft of names and driver's licenses. Without a hack of information such as social security numbers, account numbers, or credit card numbers, there is no obvious, credible risk of identity theft that risks real, immediate injury.").

Second, the Complaint does not specifically identify any "forward-looking" injunctive relief that could possibly prevent any potential future harm stemming from the incident from occurring. *See TransUnion*, 141 S. Ct. at 2210 (internal citations omitted). Instead, Plaintiffs request that Elephant make various changes to its data security. Compl. ¶ 254. Changes to Elephant's current data security systems would not address Plaintiffs complaints regarding alleged potential harm from an incident that already occurred. *See I.C. v. Zynga, Inc*., -- F. Supp. 3d --, 2022 WL 2252636, at *12 (N.D. Cal. Apr. 29, 2022) (holding that requested injunctive relief must relate to "*this* data breach" and not be designed to prevent a future one) (emphasis in original). Plaintiffs have failed to establish standing to seek "forward-looking" injunctive relief designed to prevent an imminent and substantial harm.

### B.    Plaintiffs Have Failed to State Claims Upon Which Relief Can Be Granted

Even if Plaintiffs had been able to show injuries-in-fact that would grant them Article III standing to bring this lawsuit, the Complaint should nevertheless be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To survive a Rule 12(b)(6) motion, a complaint must "contain either direct or inferential allegations respecting all the material

13

elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "plausible on its face," meaning that the plaintiff must plead sufficient factual allegations to "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 570).

Plaintiffs have not alleged facts sufficient to properly state any of their asserted causes of action.

### 1.    Plaintiffs Have Failed to State a Claim for Violation of the Driver Privacy Protection Act

The DPPA prohibits knowingly disclosing personal information from a motor vehicle record for an impermissible purpose. 18 U.S.C.A. § 2721. It is wholly inapplicable in the context of a cybercriminal infiltrating an insurance company's computer network to steal personal information. There are no facts in the Complaint alleging that Elephant knowingly disclosed information from a motor vehicle record for an impermissible purpose. Plaintiffs have failed to state a cause of action for violation of the DPPA.

The DPPA "regulates the disclosure of personal information contained in the records of state motor vehicle departments." *Reno v. Condon*, 528 U.S. 141, 143 (2000). The statute makes it "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title." 18 U.S.C. § 2722(a). Under

14

Section 2721(b), personal information, including an individual's driver's license number, may be disclosed in the "normal course of business by a legitimate business or its agents, employees, or contractors . . . to verify the accuracy of personal information submitted by the individual to the business or its agents, employees, or contractors. . . ." 18 U.S.C. § 2721(b)(3)(a). It may also be disclosed "[f]or use by any insurer or insurance support organization, or by a self-insured entity, or its agents, employees, or contractors, in connection with claims investigation activities, antifraud activities, rating or underwriting." 18 U.S.C. § 2721(b)(6). In order to state a claim for violation of the DPPA, a complaint must adequately allege that "(1) the defendant knowingly obtain[ed], disclose[d] or use[d] personal information; (2) from a motor vehicle record; and (3) for a purpose not permitted." *Taylor v. Acxiom Corp.*, 612 F.3d 325, 335 (5th Cir. 2010).

The critical question under the DPPA is whether Elephant knowingly disclosed Plaintiffs' driver's license numbers and other personal information. Where, as here, an unauthorized third-party actor broke into the network and stole information, the only logical answer to that question is, no. First, Plaintiffs have not pled any facts that show that the data security incident resulted in any "disclosure" of Plaintiffs' information by Elephant. Second, even if there had been a "disclosure" during the data security incident, there are no facts in the Complaint that show it was made "knowingly" by Elephant.

The DPPA does not define the term "disclose." As Plaintiffs note in the Complaint, however, the ordinary dictionary definition of "disclose" is "to make known or public" or "expose to view." Compl. ¶ 148 (citing https://www.merriam-webster.com/dictionary/disclose). There are no facts in the Complaint that show Elephant acted to make Plaintiffs' personal information "known or public" or "to expose it to view." The notice that Elephant sent to Plaintiffs and other potentially affected individuals states that Elephant noticed unusual activity on its computer

15

network and then "promptly undertook a comprehensive investigation, working with third-party specialists, to secure our systems and to confirm the nature and scope of the incident, as well as any impact to information on our network." Compl. ¶ 26. It also reported the incident to federal law enforcement authorities. *Id*. Plaintiffs' allegations "plainly state that anyone that may have obtained the data did so in an unauthorized manner, which undercuts the notion that [Elephant] knowingly disclosed the data to those unauthorized individuals for any specific purpose." *Allen v. Vertafore, Inc.,* No. 20-04139, 2021 WL 3148870, at *3-4 (S.D. Tex. June 14, 2021), *aff'd*, 28 F.4th 613 (5th Cir. 2022) (dismissing putative class action complaint alleging DPPA violation where unauthorized actors accessed defendant's "unsecured external servers"); *see also Enslin v. The Coca-Cola Co.*, 136 F. Supp. 3d 654, 671 (E.D. Pa. 2015), *aff'd*, 739 Fed. App'x 91 (3d Cir. 2018) (finding that "privately holding [personal information], even in an unsecured manner, does not constitute a 'voluntary disclosure' under the DPPA" ).

Plaintiffs' numerous references to the "Unauthorized Data Disclosure" confirm this point. *See* Compl. ¶¶ 20, 25, 27, 28, 31, 36, 43, 81, 83, 86, 87, 88, 92, 93, 98, 99, 101, 102, 103, 123, 125, 127, 132, 133, 134, 138, 140, 158, 163, 166, 167, 174, 181, 182, 190, 192, 204, 210, 217, 223, 227, 233, 236, 239, 240, 243, 250, 251, 252, 253. If the acquisition of the data was "unauthorized," then Elephant was not a party to a knowing disclosure. As the Fifth Circuit explained in affirming the dismissal of the DPPA claim in *Allen*, which involved unauthorized access to a server, "the mere fact that unauthorized users managed to access the information does not imply that Vertafore granted or facilitated that access. After all, we would hardly say that personal information was 'disclosed' if it was kept in hard copy and the papers were stolen out of an unlocked, but private, storage facility." *Allen*, 28 F.4th at 617. Similarly, there is nothing in the Complaint that would suggest Elephant granted or facilitated access to its computer network.

16

To maneuver around the obvious detail that Elephant did not disclose any information when cybercriminals accessed its network without authorization, Plaintiffs attempt to draw attention to other aspects of Elephant's business. Specifically, they focus on Elephant's online insurance quoting platform that has the capability to auto-populate certain data fields with personal information, including driver's license numbers, when a customer seeks an insurance quote. *See* Compl. ¶ 5 ("Defendants intentionally configured and designed their online insurance quoting platform to generate responses to requests for insurance quotes that included personal information ('PI') from motor vehicle records that was auto-populated and obtained from third-party data providers."); ¶ 155 ("Defendants failed to use reasonable care in protecting Plaintiffs' and Class Members' PI by installing substandard security measures that failed to protect it, and voluntarily disclosed it to cyber criminals through the intentional configuration and design of its online insurance quoting platform."). They also cite to two alerts from the New York State Department of Financial Services ("NYSDFS") that warn against cyberattacks on such systems. *Id.* ¶¶ 56-57. These allegations have no relevance. There are no facts in the Complaint that show the online quoting platform had any connection whatsoever to the data security incident.

A recent decision from the U.S. District Court for the Southern District of New York shows that Plaintiffs' highlighting of the online quoting platform is solely meant to distract. In that case, the court found that the plaintiffs had stated a claim for violation of the DPPA based on a knowing disclosure of personal information where "[c]ybercriminals allegedly used certain of plaintiffs' PII—stolen from other sources—to create USAA accounts in plaintiffs' names and then steal plaintiffs' driver's license numbers that were automatically disclosed by USAA." *In re USAA Data Sec. Breach Litig.*, No. 21-5813, 2022 WL 3348527, at *1 (S.D.N.Y. Aug. 12, 2022). Respectfully, Elephant posits that *In re USAA* was incorrectly decided to the extent it suggests that actions of a

17

thief or thieves could constitute a knowing disclosure by the victim of the theft. Moreover, there are significant differences between the allegations against USAA and Elephant. In the *In re USAA* matter, the court noted that USAA—which, unlike Elephant, actually does business in New York and is regulated by NYSDFS—had received the alerts and then "suffered the type of data breach that NYSDFS predicted." *Id*.; *see also* Compl. ¶ 15 (alleging that Elephant does business in Georgia, Illinois, Indiana, Maryland, Ohio, Tennessee, Texas, and Virginia). That is not the type of data breach Elephant suffered. There are no facts in the Complaint that the online quoting platform had any connection to the data security incident. Plaintiffs' contention that Elephant's online tool resulted in "knowing" disclosures of personal information to cybercriminals is therefore misplaced and lacks any factual support.

Elephant did not knowingly disclose Plaintiffs' personal information for an impermissible purpose, and Plaintiffs have accordingly failed to state a cause of action for violation of the DPPA.

### 2.       Plaintiffs Have Failed to State a Claim for Negligence

Plaintiffs have failed to properly plead their negligence cause of action in Count II because they have failed to allege actual damages.

The elements of a claim of negligence are virtually identical under the law of Virginia, where Elephant is headquartered, and under the law of Illinois, Kansas, and Texas—the three states where Plaintiffs reside.[4] In order to set forth a cause of action for negligence, a plaintiff must allege that (1) a defendant owed a legally cognizable duty to the plaintiff; (2) the duty was breached; (3) a causal connection exists between the duty breached and the plaintiff's injury; and (4) the plaintiff

---

[4] In a choice-of-law analysis, Virginia "applies the *lex loci delicti,* the law of the place of the wrong, to tort actions." *Milton v. IIT Research Inst.,* 138 F.3d 519, 521 (4th Cir.1998). "Under Virginia law, the place of the wrong is the place the last event necessary to make an [actor] liable for an alleged tort takes place." *General Assur. of America, Inc. v. Overby–Seawell,* 533 Fed. App'x. 200, 206 (4th Cir. 2013) (internal citation and quotation marks omitted). Because choice-of-law analyses are fact-intensive, they are often premature at the pleading stage. For purposes of this motion, Elephant will analyze the tort claims under Illinois, Texas, Kansas, and Virginia law.

18

incurred damages as a result. *See Guvenoz v. Target Corp.*, 30 N.E.3d 404, 422 (Ill. App. Ct. 2015); *Patterson v. Cowley Cnty.*, 413 P.3d 432, 437 (Kan. 2018); *Gann v. Anheuser-Busch, Inc.*, 394 S.W.3d 83, 88 (Tex. App. 2012); *Blue Ridge Serv. Corp.*, 624 S.E.2d 55, 62 (Va. 2006).

Plaintiffs do not allege any ongoing, present harm resulting from Elephant's alleged negligence such as a stolen identity or unreimbursed fraudulent charges. Because they cannot point to any financial loss, they instead rely on conclusory allegations concerning the risk of future identity theft, alleged mitigation expenses, lost opportunity costs, anxiety and emotional distress, and other "future costs in terms of time, effort, and money" to show a purportedly cognizable injury. Compl. ¶ 182. These alleged harms are insufficient to support a cause of action for negligence.

In data breach cases, vague allegations of future harm and speculative costs do not satisfy the required damages element of a negligence claim. As one court explained in dismissing claims for negligence and negligence *per se* in a putative data breach class action, "Plaintiffs fail to plausibly allege cognizable damages. Plaintiffs can only speculate as to whether they *will* suffer harm at some unknown future date. They also can only speculate about the extent of that harm, if and when it does materialize. These damages are neither certain nor capable of proof with reasonable certainty." *Bohnak v. Marsh & McLennan Cos., Inc.*, 580 F. Supp. 3d 21, 31 (S.D.N.Y. 2022) (emphasis in original). Similarly, all of the alleged injuries that Plaintiffs assert relate to some future harm that may or may not ultimately occur. These allegations cannot support a negligence cause of action. *See Everhart v. Colonial Pipeline Co.*, No. 21-3559, 2022 WL 3699967, at *2 (N.D. Ga. July 22, 2022) (finding data breach plaintiff failed to state negligence claim because (i) diminished value of PII, (ii) out-of-pocket mitigation expenses, (iii) lost opportunity costs, and (iv) increased risk to PII are not "legally cognizable injuries for which

19

damages may be recoverable for a tort such as negligence"); *see also Hayes v. Automation Personnel Services, Inc.*, No. 2:21-cv-00859-AMM at *20 (N.D. Ala. Sept. 27, 2022) (finding that plaintiffs failed to state a claim for negligence when plaintiffs failed to allege any facts about the pecuniary loss they incurred); *In re SuperValu, Inc. Customer Data Sec. Breach Litig.,* No. 14-2586, 2018 WL 1189327, at *13 (D. Minn. Mar. 7, 2018) (dismissing negligence claim where "time spent monitoring his account information to guard against potential fraud" was not a "cognizable injury"); *Krottner v. Starbucks Corp.,* 406 F. App'x 129, 131 (9th Cir. 2010) (data breach plaintiffs "have not established a cognizable injury for purposes of their negligence claim" because "[t]he alleged injuries here stem from the danger of future harm").

Plaintiffs have failed to allege facts showing a legally cognizable injury. Thus, their negligence cause of action should be dismissed.

### 3.    Plaintiffs Have Failed to State a Claim for Negligence *Per Se*

Like their cause of action for negligence, Plaintiffs' cause of action for negligence *per se* fails because Plaintiffs have not pled facts showing that they suffered cognizable damages.

Negligence *per se* is a tort concept whereby a legislatively imposed standard of conduct is adopted by courts as defining the conduct of a reasonably prudent person. *Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 278 (Tex. 1979); *see also Garner v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 888 F. Supp. 2d 911, 927 (S.D. Ill. 2012) ("Under Illinois law, if a statute defines what is due care in some activity, the violation of the statute either conclusively or (in Illinois) presumptively establishes that the violator failed to exercise due care.") (internal citation and quotation marks omitted); *Ely v. Hitchcock*, 58 P.3d 116, 124 (Kan. Ct. App. 2002) ("The elements of negligence per se are: (1) A violation of a statute, ordinance or regulation, and (2) the violation must be the cause of the damages resulting therefrom.") (internal citation and

quotation marks omitted); *Halterman v. Radisson Hotel Corp.*, 259 Va. 171, 176-77 (2000) (stating similar elements of negligence *per se* claim). Because negligence *per se* is a theory of negligence, Plaintiffs must also show that they suffered legally cognizable damages.

Plaintiffs contend that Elephant committed negligence *per se* by failing to use reasonable measures to protect personal data and not complying with applicable industry standards in violation of both Section 5 of the FTC Act and the DPPA. As discussed above, Elephant did not violate the DPPA; therefore, that statute could not serve as a basis for a negligence *per se* claim. While some courts have found that an alleged violation of Section 5 of the FTC Act could lead to a negligence *per se* cause of action, Plaintiffs are not relieved of their obligation to show cognizable damages. As previously discussed, that is an obligation they have not met. *See Bohnak.*, 580 F. Supp. 3d at 31 (dismissing negligence *per se* claim for failure to plead cognizable damages).

Plaintiffs' failure to properly plead damages requires dismissal of their negligence *per se* claim.

### 4.      Plaintiffs Have Failed to State a Claim for Unjust Enrichment

In Count IV, Plaintiffs assert a claim for unjust enrichment. Because Elephant has not unjustly retained a benefit to Plaintiffs' detriment, this claim fails and should be dismissed.

Like the elements of negligence, the elements of a cause of action for unjust enrichment are generally uniform across the applicable states. A plaintiff must show that (1) the plaintiff conferred a benefit on the defendant; (2) knowledge of the benefit by the defendant; and (3) the retention of the benefit under such circumstances that make it inequitable for the defendant to retain it. *Nat'l Union Fire Ins. Co. of Pittsburgh v. DiMucci*, 34 N.E.3d 1023, 1043 (Ill. App. Ct. 2015); *City of Neodesha v. BP Corp. N. Am., Inc.*, 334 P.3d 830, 862 (Kan. Ct. App. 2014); *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App. 2013); *Schmidt v. Household Fin. Corp.,*

21

*II*, 661 S.E.2d 834, 838 (Va. 2008). Plaintiffs allege that "Defendants were benefitted by the conferral upon them of the PI pertaining to Plaintiffs and Class Members and by their ability to retain, use, and profit from that information." Compl. ¶ 193. This simplifies and misconstrues the relationship between Elephant and Plaintiffs. Elephant did not profit from the "conferral" of personal information. That conferral was merely part of a process through which customers could obtain prices for and potentially purchase Elephant's insurance products. Elephant only benefitted when individuals agreed to purchase insurance and paid for it—and there is nothing unjust about Elephant retaining a benefit it received in exchange for providing a product.

Plaintiffs also contend that Elephant "benefitted through its unjust conduct by retaining money gained through their practice of collecting PI from the Plaintiffs . . . and providing inadequate data privacy and security." Compl. ¶ 197. This argument also fails. Plaintiffs Cardenas, Bias, and Holmes allege that they were never Elephant customers and therefore never provided any money to Elephant. Compl. ¶¶ 82, 89, 95. Plaintiff Shaw was an Elephant customer but there is no allegation that he paid a higher premium to Elephant for the purpose of data security. *See Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 761 (C.D. Ill. 2020) (dismissing unjust enrichment claim where "Plaintiffs have not alleged that any specific portion of their payments went toward data protection; rather, they state that their payments were for food and gas."); *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1072 (C.D. Ill. 2016) (dismissing unjust enrichment claim where plaintiff "paid for food products. She did not pay for a side order of data security and protection; it was merely incident to her food purchase."). In sum, Elephant only received benefits from payments for insurance, and retaining that benefit is not unjust. Count IV should be dismissed.

22

**5.      Plaintiffs Have Failed to State a Claim for Violation of the Texas Deceptive Trade Practices and Consumer Protection Act**

In Count V, Plaintiffs Cardenas and Holmes attempt to bring a claim under the Texas Deceptive Trade Practices and Consumer Protection Act ("TDTPA"). However, there are no facts in the Complaint that show either Cardenas or Holmes was harmed by any allegedly false, misleading, or deceptive acts by Elephant. Thus, Count V should be dismissed.

The TDTPA protects a consumer from "false, misleading, or deceptive acts or practices," from an "unconscionable action or course of action by any person," and from the "breach of an implied or express warranty in the conduct of any trade or commerce that is the producing cause of actual damage." *Huynh v. Walmart Inc.*, 30 F.4th 448, 453 (5th Cir. 2022) (quoting *Miller v. Kim Tindall & Assocs., LLC*, 633 S.W.3d 102, 104–05 (Tex. App. 2021) (pet. denied)). In order to plead a claim under the TDTPA, a plaintiff must sufficiently allege: "(1) the plaintiff was a consumer; (2) the defendant either engaged in false, misleading, or deceptive acts . . . or engaged in an unconscionable action or course of action; and (3) the [Act's] laundry-list violation or unconscionable action was a producing cause of the plaintiff's injury." *Id.* (alteration in original) (quoting *Bus. Staffing, Inc. v. Jackson Hot Oil Serv.*, 401 S.W.3d 224, 236 (Tex. App. 2012)).

Plaintiffs allege that Elephant "engaged in false, misleading, or deceptive acts and practices" by having inadequate data security and by "misrepresenting that they would protect the privacy and confidentiality of Plaintiffs Cardenas' and Holmes'" information. *See* Compl. ¶ 209. But there are no allegations in the Complaint that Cardenas and Holmes saw, much less relied on, any representations by Elephant about its data security. Even if they had, as discussed above, there are no allegations showing that they suffered any harm as a result. As a result, Count V should be dismissed.

23

### 6.   Plaintiffs Have Failed to State a Claim for Violation of the Illinois Consumer Fraud Act

The Court should dismiss Count VI for violation of the Illinois Consumer Fraud Act ("ICFA") because Plaintiffs have not pled any facts that show they suffered actual damages.

The ICFA seeks to protect consumers, borrowers, and businesspersons against "fraud, unfair methods of competition, and other unfair and deceptive business practices." *Rudy v. Family Dollar Stores, Inc.*, No. 21-3575, 2022 WL 345081, at *3 (N.D. Ill. Feb. 4, 2022) (quoting *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010)). To state a claim under this statute, a plaintiff must show (1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that plaintiff rely on it; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce. *Id.* (quoting *Camasta v. Jos A. Bank. Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014)). To determine whether a practice is deceptive, courts question whether it has a likelihood of deception or the capacity to deceive. *See Rudy*, 2022 WL 345081, at *3 (quoting *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019)). Plaintiffs contend that Elephant violated the ICFA by failing to "comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and the Illinois Subclass Members' PI," including duties imposed by various federal and Illinois laws and regulations. Compl. ¶ 227.

However, a claim under the ICFA also requires a showing of actual damages, which has been interpreted to refer to "actual pecuniary harm." *See Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (citing *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1197 (Ill. App. Ct. 2008)). "Actual damages under the ICFA must be calculable and measurable by the plaintiff's loss, as opposed to the defendant's gain." *Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 1005 (N.D. Ill. May 23, 2017) (internal citations and quotation marks omitted). Plaintiffs' alleged damages are premised on an increased risk of identity theft and future mitigation costs, not on any pecuniary harm they have

24

already suffered. "However, under the ICFA, a plaintiff does not suffer actual damage simply because of the increased risk of future identity theft or because the plaintiff purchased credit monitoring services." *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 526 (N.D. Ill. 2011). As a result, Count VI should be dismissed.

### 7. Plaintiffs Have Failed to State a Claim for Violation of the Illinois Uniform Deceptive Trade Practices Act

In addition to the claim under the ICFA, Plaintiff Bias asserts a cause of action under the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"). Because she cannot show that she is likely to be damaged by any deceptive trade practice in the future, this claim also fails.

The IUDTPA "was enacted to prohibit unfair competition and was not intended to be a consumer protection statute." *Chabraja v. Avis Rent A Car* Sys.*, Inc.*, 549 N.E.2d 872, 876 (Ill. App. Ct. 1989). "Nonetheless, a consumer may seek injunctive relief under the [IUDTPA] if she can show that she is likely to be damaged in the future by the defendant's misleading trade practices." *Perdue*, 455 F. Supp. 3d at 773 (citing *Popp v. Cash Station, Inc.*, 613 N.E.2d 1150, 1157 (Ill. App. Ct. 1992). This is a high bar for a plaintiff to clear. In most IUDTPA actions brought by consumers, "the plaintiff is unable to allege facts showing a likelihood of future harm because the harm has already occurred, and because the plaintiff is unlikely to be deceived by a defendant's misstatements again in the future." *Id.* (citing *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 918 (N.D. Ill. 2013)). The only future harm that Plaintiff Bias alleges is the speculative threat of future identity theft or fraud resulting from the data security incident, but "this is not the type of harm that the Court is able to issue an injunction against. In other words, the Court cannot stop hackers from using their information in the future." *Id.*; *see also Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 799-800 (W.D. Wis. 2019) (dismissing IUDTPA claims where plaintiff's "arguments go to the risk of harm that [plaintiff] faces from the data breaches themselves, not the risk of harm that

25

[plaintiff] faces if [defendant] continues to misrepresent its protective measures"). There is no deceptive trade practice that could injure Plaintiff Bias in the future. Accordingly, Count VII should be dismissed.

### 8. Plaintiffs Have Failed to State a Claim for Declaratory and Injunctive Relief

In Count VIII, Plaintiffs seek declaratory and injunctive relief, which consists of a list of measures to improve Elephant's data security. *See* Compl. ¶ 254. Plaintiffs cannot state a claim for declaratory and injunctive relief because Plaintiffs fail to allege any forward-looking injunctive relief.

The Declaratory Judgment Act allows a court, in the case of an actual controversy, to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. To state a claim for relief under the Declaratory Judgment Act, a plaintiff must adequately allege a dispute that is: (1) "definite and concrete, touching the legal relations of parties having adverse legal interests"; (2) "real and substantial"; and (3) "admit[ting] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

Here, Plaintiffs have not identified an impending future harm where "forward-looking" injunctive relief that would prevent any such harm. The requested injunctive relief all relates to improvements to Elephant's current data security, which would have no impact on a breach that

has already occurred. Thus, Plaintiffs have failed to state a claim for declaratory and injunctive, and the requested relief should be stricken.

### C.    In the Alternative, the Court Should Strike Impertinent and Immaterial Allegations from the Consolidated Complaint

If the Court does not dismiss the Consolidated Complaint, it should strike the immaterial and impertinent allegations concerning identity theft that have nothing to do with the parties or facts of this case.

Federal Rule of Civil Procedure 12(f) permits a court to strike immaterial and impertinent allegations from a pleading on its own or upon motion by a party. *See* Fed. R. Civ. P. 12(f). A court should grant the motion when "the challenged allegations have no possible or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to a party." *Gilman & Bedigan, LLC v. Sackett*, 337 F.R.D. 113, 117 (D. Md. 2020). Instead of focusing solely on the relevant data security incident and their individual experiences, Plaintiffs have loaded the Consolidated Complaint with extraneous material concerning the actions of identity thieves and statistics about cybercrime. *See* Compl. ¶¶ 37-39, 41-42, 44-50, 53, 59, 65-68, 70, 120, and 126.

Plaintiffs have pled no facts regarding the purported motivations of the cybercriminals who executed the attack on Elephant. These immaterial and generalized allegations are designed to improperly inflame the issues and lend weight to the alleged risk of future identity theft. Plaintiffs should limit the Complaint to the Elephant data security incident and their individual experiences, and the Court should strike paragraphs 37-39, 41-42, 44-50, 53, 59, 65-68, 70, 120, and 126 pursuant to Rule 12(f).

27

## IV.    CONCLUSION

For all of the foregoing reasons, Defendants Elephant Insurance Company, Elephant Insurance Services, LLC, and Platinum General Agency, Inc. d/b/a Apparent Insurance respectfully request that the Court grant their motion and dismiss Plaintiffs' Consolidated Class Action Complaint with prejudice.

Dated: October 14, 2022                          Respectfully submitted,

*/s/ Benjamin F. Dill*
Benjamin F. Dill (VSB #93000)
SINNOTT NUCKOLS & LOGAN, P.C.
13811 Village Mill Drive
Midlothian, Virginia 23114-4365
804-378-7600
bdill@snllaw.com

*/s/ Claudia D. McCarron*
Claudia D. McCarron (admitted *pro hac vice*)
Richard M. Haggerty (admitted *pro hac vice*)
MULLEN COUGHLIN LLC
426 W. Lancaster Avenue, Suite 200
Devon, PA 19333
(267) 930-4770
cmccarron@mullen.law
rhaggerty@mullen.law

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2022, a copy of this *Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint* was filed electronically and served on all counsel of record through the electronic filing system.

/s/ *Benjamin F. Dill*
Benjamin F. Dill, Esq. (VSB#93000)
SINNOTT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Drive
Midlothian, Virginia 23114
(804) 893-3863
(804) 378-2610 (Facsimile)
bdill@snllaw.com
*Counsel for Defendants*