# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# RICHMOND DIVISION

| | |
|---|---|
| CHRISTOPHER HOLMES, *et al.*, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ELEPHANT INSURANCE COMPANY, ELEPHANT INSURANCE SERVICES, LLC, and PLATINUM GENERAL AGENCY, INC. d/b/a APPARENT INSURANCE, <br><br> Defendants. | Civil Action No. 3:22-cv-00487-JAG |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS
<u>PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT</u>**

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. RELEVANT FACTUAL ALLEGATIONS ........................................................................ 2

III. PROCEDURAL HISTORY.................................................................................................. 2

IV. LEGAL ARGUMENT .......................................................................................................... 3

    A. Plaintiffs Have Failed to State a Claim for Violation of the DPPA (Count I).............. 4

    B. Plaintiffs Have Failed to Allege Actual Damages ......................................................... 6

        1. Negligence and Negligence *Per Se* (Counts II and III) .......................................... 8

        2. Unjust Enrichment (Count IV).................................................................................. 9

        3. Texas Deceptive Trade Practices and Consumer Protection Act (Count V) ........ 10

    C. No Plaintiff Has Standing to Bring Illinois Statutory Claims (Counts VI and VII)... 10

V. CONCLUSION................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbott v. Lockheed Martin Corp.*,
  725 F.3d 803 (7th Cir. 2013) ................................................................................................ 7

*Allen v. Vertafore, Inc.*,
  2021 WL 3148870 (S.D. Tex. June 14, 2021), *aff'd* 28 F.4th 613 (5th Cir. 2022) ..................... 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................ 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................ 6

*Deloitte & Touche v. Weller*,
  976 S.W.2d 212 (Tex. App. 1998) ....................................................................................... 8

*Eun Bok Lee v. Ho Chang Lee*,
  411 S.W.3d 95 (Tex. App. 2013) ......................................................................................... 9

*Gardiner v. Walmart Inc.*,
  2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) ....................................................................... 7

*Gilliam v. Immel*,
  293 Va. 18 (Va. 2017) ......................................................................................................... 8

*Gulf States Util. Co. v. Low*,
  79 S.W.3d 561 (Tex. 2002) ............................................................................................... 10

*Holmes v. Elephant Ins. Co.*,
  156 F.4th 413 (4th Cir. 2025) ..................................................................................... Passim

*Holmes v. Elephant Ins. Co.*,
  2023 WL 4183380 (E.D. Va. June 25, 2023) ...................................................................... 2

*In re GEICO Customer Data Breach Litig.*,
  691 F. Supp. 3d 624 (E.D.N.Y. 2023) ................................................................................. 5

*In re MAPFRE Data Disclosure Litig.*,
  2025 WL 975669 (D. Mass. Mar. 31, 2025) ....................................................................... 5

*In re NCB Mgmt. Servs., Inc., Data Breach Litig.*,
  748 F. Supp. 3d 262 (E.D. Pa. 2024) ................................................................................... 4

*Schmidt v. Household Fin. Corp.,*
  *II*, 661 S.E.2d 834 (Va. 2008)..................................................................................................9

*Taylor v. Acxiom Corp.*,
  612 F.3d 325 (5th Cir. 2010) ....................................................................................................4

**Statutes**

18 U.S.C. § 2722(a) ........................................................................................................................4

18 U.S.C.A. § 2721.........................................................................................................................4

Tex. Bus & Com. Code § 17.50(b) ...............................................................................................10

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ................................................................................. 1, 2

Federal Rule of Civil Procedure 12(b)(1) ......................................................................................2

Defendants Elephant Insurance Company, Elephant Insurance Services, LLC, and Platinum General Agency, Inc. d/b/a Apparent Insurance (collectively, "Elephant"), submit this Supplemental Memorandum of Law in support of their Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.     INTRODUCTION

This is not a data breach class action in which the underlying data security incident involved the manipulation of an online insurance quoting tool. More crucially, in their Consolidated Class Action Complaint, Plaintiffs Jaime Cardenas and Christopher Holmes *do not allege* that the data security incident involved the manipulation of Elephant's online quoting tool. The absence of that allegation alone is enough to warrant the dismissal of Plaintiffs' cause of action under the Driver's Privacy Protection Act (the "DPPA"). There are no facts in the Complaint that would allow one to conclude that Elephant made a knowing disclosure of Plaintiffs' information through the underlying data security incident, and without such facts, Plaintiffs cannot state a claim for violation of the DPPA.

Plaintiffs' other causes of action fare no better. When the United States Court of Appeals for the Fourth Circuit affirmed in part and reversed in part this Court's decision dismissing the Complaint for lack of Article III standing, it held that Plaintiffs Cardenas and Holmes had standing based only on the "publicity given to their driver's license numbers" on the dark web. The Fourth Circuit rejected all of Plaintiffs' other theories of injury, including risk of future identity theft, mitigation costs, lost time, and emotional distress. Unlike their cause of action under the DPPA, which provides statutory damages of $2,500 per violation, Plaintiffs' causes of action for negligence, negligence *per se*, unjust enrichment, and violation of the Texas Deceptive Trade Practices and Consumer Protection Act do not permit the awarding of statutory damages. Nor do any of these causes of action permit the awarding of nominal damages. For each of these causes

1

of action, Plaintiffs must allege facts showing actual, provable damages relating to the publication of their driver's license numbers on the dark web. And, in order to adhere to the Fourth Circuit's ruling, those actual, provable damages cannot relate to any risk of future identity theft caused by that publication, any lost time or mitigation costs related to that publication, or any emotional distress caused by that publication. Given that framework, there are no facts in the Complaint stating actual, provable damages flowing from the publication of Cardenas' and Holmes' driver's license numbers that are disconnected from the theories of injury that the Fourth Circuit rejected. Without facts showing actual damages, each of these causes of action should be dismissed.

Finally, because the Fourth Circuit found that Plaintiff Trinity Bias lacked Article III standing, there is no named plaintiff who can bring the causes of action under the Illinois Consumer Fraud Act and the Illinois Uniform Deceptive Trade Practices Act. Those two causes of action should also be dismissed.

## II.   RELEVANT FACTUAL ALLEGATIONS

Elephant incorporates by reference the factual background set forth in its memorandum of law in support of its motion to dismiss. *See* Mem. of Law., ECF No. 28, at 2-4.

## III.   PROCEDURAL HISTORY

Plaintiffs filed their Consolidated Class Action Complaint on September 14, 2022, and Elephant moved to dismiss it on October 14, 2022, under Rule 12(b)(1) for lack of Article III standing and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. On June 26, 2023, this Court granted the motion to dismiss, holding that the Court lacked subject matter jurisdiction because the Plaintiffs did not have Article III standing. *Holmes v. Elephant Ins. Co.*, No. 22-487, 2023 WL 4183380, at *6 (E.D. Va. June 25, 2023). The Court noted that, because the plaintiffs did not have standing to assert their claims, it had no reason to decide the Rule 12(b)(6) portion of the motion at that time. *Id*. at *6 n.5.

Plaintiffs appealed to the Fourth Circuit, which affirmed in part and reversed in part. The Fourth Circuit found that Plaintiffs Cardenas and Holmes had established Article III standing at the pleading stage because they had alleged that their driver's license numbers had been found on the dark web. *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 426 (4th Cir. 2025). For purposes of alleging a concrete injury-in-fact, the Fourth Circuit found that the publication of a driver's license number on the dark web was sufficiently analogous to the common law harm of public disclosure of private facts. *Id*. The court disagreed with Elephant's argument that the data security incident was not analogous to public disclosure of private facts because a criminal threat actor—and not Elephant—made the disclosure of the driver's license numbers on the dark web. *Id*. at 426-427.

Plaintiffs Bias and Shaw, who did not allege that their driver's license numbers had been found on the dark web, do not have Article III standing to pursue their claims against Elephant. *Id*. at 425. Moreover, as to the remaining plaintiffs, the Fourth Circuit found that the disclosure of Cardenas' and Holmes' driver's license numbers on the dark web was the only injury through which those two plaintiffs had standing to seek damages. The court expressly held that Cardenas and Holmes could not seek damages based on an increased risk of identity theft, mitigation costs, lost time, or emotional distress. *Id*. at 432-435. The court also found that no plaintiff had standing to seek prospective declaratory and injunctive relief. *Id*. at 428.

IV.     **LEGAL ARGUMENT**

Elephant incorporates by reference the legal arguments made in its opening and reply briefs, *see* ECF Nos. 28 and 31, and focuses this supplemental brief on the impact of the Fourth Circuit's decision and on legal authority issued since the original briefing on this motion.

### A.     Plaintiffs Have Failed to State a Claim for Violation of the DPPA (Count I)

Plaintiffs' DPPA claim focuses on two facts. First, Elephant has an online insurance quoting tool on its website. Second, Elephant was the victim of a cyberattack. What Plaintiffs lack is any factual link between those two facts. There are no allegations in the Complaint that the Elephant data security incident involved the online quoting tool. Without allegations connecting the quoting tool to the data breach, Plaintiffs have failed to allege that Elephant made a "knowing disclosure" of their information and have failed to state a claim for violation of the DPPA.

The DPPA prohibits knowingly disclosing personal information from a motor vehicle record for an impermissible purpose. 18 U.S.C.A. § 2721. The statute makes it "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title." 18 U.S.C. § 2722(a). In order to state a claim for violation of the DPPA, a complaint must adequately allege that "(1) the defendant knowingly obtain[ed], disclose[d] or use[d] personal information; (2) from a motor vehicle record; and (3) for a purpose not permitted." *Taylor v. Acxiom Corp.*, 612 F.3d 325, 335 (5th Cir. 2010).

Since Elephant filed its motion to dismiss more than three years ago, courts have continued to clarify that whether an online quoting tool is the instrument used by a cybercriminal to conduct an attack is the critical fact in determining whether a plaintiff can properly plead a knowing disclosure under the DPPA in a data breach case. For example, where a defendant allegedly fails to "install adequate security measures to protect against theft of plaintiffs' PII, leaving its servers vulnerable to cyber criminals stealing the PII," as Plaintiffs allege in the Complaint here, there is no knowing disclosure for purposes of stating a claim under the DPPA. *In re NCB Mgmt. Servs., Inc., Data Breach Litig.*, 748 F. Supp. 3d 262, 280 (E.D. Pa. 2024). On the other hand, where a defendant sends a data breach notice to impacted individuals that explains that an "'unknown party

4

used information' about the individuals 'to obtain access to additional information . . . through . . . [an] online quoting platform,'" courts have found that plaintiffs have sufficiently alleged a knowing disclosure at the pleading stage. *In re MAPFRE Data Disclosure Litig.*, No. 23-12059, 2025 WL 975669, at *2, *12 (D. Mass. Mar. 31, 2025); *see also In re GEICO Customer Data Breach Litig.*, 691 F. Supp. 3d 624, 629 (E.D.N.Y. 2023) ("[T]he Court finds that . . . Plaintiffs' DPPA claim is grounded in allegations that 'GEICO affirmatively displayed DLNs and Plaintiffs' information, and did so without any safeguards,' and not in allegations that 'GEICO was a passive bystander attacked by a third party.'").

Simply having an online quoting tool is not a violation of the DPPA. Neither is being the target of a cyberattack. There must be a link between the online quoting tool and the data security incident, and Plaintiffs must plead facts showing that link. In their opposition to Elephant's motion to dismiss, Plaintiffs emphasize that "Elephant intentionally configured its online quote system so that any member of the public could fill in information and receive a quote." Opp'n, ECF No. 30, at 19 (citing Compl. ¶¶ 5, 9, 26-27, 55, 63-64, 78, 154, 156). But Plaintiffs' Complaint does not allege an instance where a member of the public filled in information. Rather, this Complaint concerns a specific data security incident that was the subject of the "Notice of Data Incident" that Plaintiffs Cardenas and Holmes received from Elephant in June 2022. Compl. ¶ 26. Unlike in the *MAPFRE* and *GEICO* cases, that notice makes no mention of the online quoting tool—because the online quoting tool had nothing to do with the data security incident. *See id*. Indeed, Plaintiffs acknowledge that there is no knowing disclosure under the DPPA when a defendant leaves "information on unsecured servers inadvertently, servers that nonetheless were within its control." Opp'n at 19 (citing *Allen v. Vertafore, Inc.,* 2021 WL 3148870, at *4 (S.D. Tex. June 14, 2021), *aff'd* 28 F.4th 613 (5th Cir. 2022)).

The burden is on Plaintiffs to plead sufficient factual material to "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For all of their mentions of Elephant's online quoting tool in the Complaint, Plaintiffs never allege that the online quoting tool was how the cybercriminal gained access to their information. *See, e.g.,* Compl. ¶¶ 5, 9, 26-27, 55, 63-64, 78, 154, 156. Under Plaintiffs' theory, any data breach plaintiff asserting a claim under the DPPA would automatically defeat a motion to dismiss against any defendant with an online quoting tool regardless of whether that tool had anything to do with the breach. That approach impermissibly relieves Plaintiffs of their obligation to plead facts showing a knowing disclosure. Elephant did not knowingly disclose Plaintiffs' personal information for an impermissible purpose through the data security incident, and Plaintiffs have accordingly failed to state a cause of action for violation of the DPPA.

### B.     Plaintiffs Have Failed to Allege Actual Damages

In its opinion, the Fourth Circuit addressed the basis on which Plaintiffs Cardenas and Holmes could seek damages:

> Cardenas and Holmes had their driver's license numbers then posted on the dark web. The publicity given to their driver's license numbers inflicted a concrete harm sufficient to establish an actual injury-in-fact. Accordingly, the two of them—along with anyone in their class, if their class is certified—can seek damages for that injury. ***But they cannot recover any other form of relief***.

*Holmes*, 156 F.4th at 435 (emphasis added).

Besides the DPPA, none of the remaining causes of action in the Complaint—negligence, negligence *per se*, unjust enrichment, and violation of the Texas Deceptive Trade Practices and Consumer Protection Act—permits a plaintiff to collect statutory damages. Nor do any of these causes of action allow an award of nominal damages. Instead, each of these causes of action

6

requires Plaintiffs to sufficiently allege and ultimately prove actual damages. Because Plaintiffs have failed to plead actual damages resulting from the publication of their driver's license numbers on the dark web, the Court should dismiss the causes of action for negligence, negligence *per se*, unjust enrichment, and violation of the Texas Deceptive Trade Practices and Consumer Protection Act.

Whether a plaintiff has suffered a concrete injury-in-fact in order to establish Article III standing is a distinct legal inquiry from whether a plaintiff has sufficiently alleged actual damages for the asserted causes of action. *See Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 808 (7th Cir. 2013) ("Injury-in-fact for standing purposes is not the same thing as the ultimate measure of recovery."). The first question is jurisdictional; the second question concerns whether a plaintiff can adequately plead the required elements of the causes of action. As one court noted in dismissing a negligence claim for failure to plead actual damages in a data breach case, "the allegations required to sufficiently plead injury-in-fact for purposes of Article III standing are not the same as those required to plead damages for purposes of state law claims." *Gardiner v. Walmart Inc.*, No. 20-4618, 2021 WL 2520103, at *5 (N.D. Cal. Mar. 5, 2021).

In its decision, the Fourth Circuit expressly held that Plaintiffs cannot seek damages for risk of future harm, mitigation costs or lost time related to future harm, or emotional distress. *Holmes*, 156 F.4th at 432-435. While the Fourth Circuit held that the publication of Cardenas' and Holmes' driver's license numbers on the dark web was sufficient to show an injury-in-fact for Article III standing, there are no facts in the Complaint and no arguments in the opposition brief that show how Plaintiffs suffered actual damages as a result of this injury-in-fact in a way that is not connected to the risk of future identity theft. *See, e.g.*, Compl. ¶ 182 (listing alleged damages under negligence claim); Opp'n at 20 ("Plaintiffs allege they are subject to an increased risk of

7

identity theft and fraud because of the UDD, have suffered loss of privacy, and have spent significant time, effort, and resources addressing the UDD."). Plaintiffs mention a general "loss of privacy" related to the data security incident, but they never articulate how the specific posting of the driver's license numbers caused actual damages. *See* Opp'n at 20. Instead, in arguing for actual damages, they focus on "the imminent risk of identity theft" and the corresponding lost time and mitigation efforts—all of which are theories of damages foreclosed by the Fourth Circuit's ruling. *See* Opp'n at 21-22.

In discussing the posting of Cardenas' and Holmes' driver's license numbers to the dark web, the Fourth Circuit observed that "a driver's license number is unlike the details of an affair or a medical condition. People do not consider their driver's licenses embarrassing and hand them to bartenders and waiters and police officers without hesitation." *Holmes*, 156 F.4th at 427. Accordingly, while the dark web posting may be enough to show an Article III injury-in-fact, there are no facts in the Complaint that come close to detailing how Plaintiffs could have suffered actual damages from the exposure of information they hand over to others "without hesitation." *Id*. That pleading failure is fatal to each of the remaining causes of action.

### 1. Negligence and Negligence *Per Se* (Counts II and III)

The Virginia Supreme Court has held that "damages are not presumed in a negligence action" and that "nominal damages, to vindicate a technical right, cannot be recovered in a negligence action, where no actual loss has occurred." *Gilliam v. Immel*, 293 Va. 18, 26 n. 6 (Va. 2017) (citing William L. Prosser, The Law of Torts 143 (4th ed. 1971)) (internal quotation marks omitted); *see also Deloitte & Touche v. Weller*, 976 S.W.2d 212, 215 (Tex. App. 1998) ("Because actual injury is an element of a negligence claim, [a]n action for negligence cannot be maintained

8

unless some damages result therefrom.") (internal citation and quotation marks omitted).[1] Plaintiffs therefore cannot recover nominal damages for an alleged "loss of privacy." They must instead plead facts showing how the posting of the driver's license numbers—the same information that is handed over to police officers, bartenders, hotel clerks, airport security officers, bank tellers, car rental clerks, and others on a daily basis—resulted in actual damages not related to future identity theft. They have alleged no such facts.

### 2. Unjust Enrichment (Count IV)

To state a claim for unjust enrichment, a plaintiff must show that (1) the plaintiff conferred a benefit on the defendant; (2) knowledge of the benefit by the defendant; and (3) the retention of the benefit under such circumstances that make it inequitable for the defendant to retain it. *Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 111 (Tex. App. 2013); *Schmidt v. Household Fin. Corp.*, 661 S.E.2d 834, 838 (Va. 2008). Plaintiffs' theory of recovery under their cause of action for unjust enrichment is that Elephant "profited by using Plaintiffs' and Class Members' PII to market their services and facilitate providing online quotes to potential clients" and "failed to provide reasonable and adequate security despite being aware of the sensitivity of the information it was using." Opp'n at 25. As Elephant argued in its opening and reply briefs, there are no facts in the Complaint that support this argument. Following the Fourth Circuit's decision, it is also an argument for recovery that is not available. Plaintiffs may seek damages based on the "publicity given to their driver's license numbers." *Holmes*, 156 F.4th at 435. They cannot seek damages on any alleged benefits that Elephant unjustly retained by collecting and maintaining Plaintiffs' personal information. The cause of action for unjust enrichment should be dismissed.

---

[1] In its opening brief, Elephant analyzed the causes of action under Virginia law and the laws of the states in which the four named Plaintiffs reside. Cardenas and Holmes both reside in Texas.

### 3. Texas Deceptive Trade Practices and Consumer Protection Act (Count V)

In its opening brief, Elephant argued that Plaintiffs failed to state a claim under the Texas Deceptive Trade Practices and Consumer Protection Act because (1) there are no allegations in the Complaint that Cardenas and Holmes relied on any representations by Elephant about its data security; and (2) there are no allegations showing that Cardenas and Holmes suffered actual damages. Both of those arguments still warrant the dismissal of this claim. Following the Fourth Circuit opinion, however, it is worth noting that the Texas Supreme Court has held that this statute "expressly provides for the recovery of 'actual damages,' but not nominal damages." *Gulf States Util. Co. v. Low*, 79 S.W.3d 561, 567 (Tex. 2002) (citing Tex. Bus & Com. Code § 17.50(b)). "Consequently, nominal damages are not available" for an alleged loss of privacy sustained through the dark web posting of driver's license numbers. *See id*.

### C. No Plaintiff Has Standing to Bring Illinois Statutory Claims (Counts VI and VII)

Plaintiff Trinity Bias was the only plaintiff asserting claims under the Illinois Consumer Fraud Act (Count VI) and under the Illinois Uniform Deceptive Trade Practices Act (Count VII). Because Plaintiff Bias does not have standing to pursue any of her claims, there is no remaining plaintiff asserting either cause of action. *Holmes*, 156 F.4th at 435 ("And Bias and Shaw cannot recover at all."). Both claims should be dismissed.

## V. CONCLUSION

For all of the foregoing reasons, Defendants Elephant Insurance Company, Elephant Insurance Services, LLC, and Platinum General Agency, Inc. d/b/a Apparent Insurance respectfully request that the Court grant their motion and dismiss Plaintiffs' Consolidated Class Action Complaint with prejudice.

Dated: February 25, 2026                    Respectfully submitted,

*/s/ Benjamin F. Dill*
Benjamin F. Dill (VSB #93000)
MCANGUS GOUDELOCK & COURIE LLC
120 Eastshore Drive, Suite 200
Richmond, VA 23059
(804) 944-2992
benjamin.dill@mgclaw.com

*/s/ Claudia D. McCarron*
Claudia D. McCarron (admitted *pro hac vice*)
Richard M. Haggerty (admitted *pro hac vice*)
MULLEN COUGHLIN LLC
426 W. Lancaster Avenue, Suite 200
Devon, PA 19333
(267) 930-4770
cmccarron@mullen.law
rhaggerty@mullen.law

*Counsel for Defendants*