**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| TRINITY BIAS, JAIME CARDENAS, CHRISTOPHER HOLMES, and ROBERT SHAW, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>ELEPHANT INSURANCE COMPANY, ELEPHANT INSURANCE SERVICES, LLC, and PLATINUM GENERAL AGENCY, INC. d/b/a APPARENT INSURANCE<br><br>      Defendants. | Civil Action No. 3:22-cv-00487-JAG<br><br>**CLASS ACTION** |

**STIPULATION TO ESTABLISH A PROTOCOL**

**FOR THE PRODUCTION OF DOCUMENTS AND ESI**

Pursuant to the agreement reached between Plaintiffs and Defendants herein, the Parties stipulate to the following Protocol relating to the Production of Documents and Electronically Stored Information ("ESI") in these Proceedings, which binds all parties and their counsel of record in this Action, whether they currently are involved or become so in the future (collectively, the "Parties"). The ESI Protocol shall govern productions made by any third party who is subpoenaed in this action unless otherwise agreed to by the issuing party and the third party. Accordingly, the ESI Protocol shall be attached to any subpoena issued in this action.

**I.      Production of Documents Originating as Paper**

**1.      TIFFs**. Documents should be produced as single-page, black and white, group IV TIFFs imaged at 300 dpi. Bates numbers, confidentiality designations (in accordance with the

protective order governing the case), and redactions (to the extent they are necessary) should be burned into the image. Original document orientation shall be maintained (*i.e.*, portrait to portrait and landscape to landscape) where reasonably possible. TIFF image files should be provided in an "Images" folder.

Documents containing color need not be initially produced in color. However, the Parties will honor reasonable requests for reproduction of a color document if an original document contains color necessary to understand the meaning or content of the document. Any documents produced in color should be produced in JPG format.

2.      **Unitizing Documents**. In scanning paper documents, the Parties will utilize logical unitization of documents such that distinct documents may not be merged into a single record, and single documents may not be split into multiple records (*i.e.*, paper documents should be logically unitized). For example, documents stored in a binder, folder, or similar container (each a "container") should be produced in the same order as they appear in the container. The front cover of the container should be produced immediately before the first document in the container. The back cover of the container should be produced immediately after the last document in the container. The parties will undertake reasonable efforts to, or have their vendors, logically unitize documents in accordance with the requirements of this paragraph, but nothing in this paragraph shall require the parties to undertake efforts to unitize documents that would be unduly burdensome. The parties agree to meet and confer to address situations in which a party believes that documents have not been properly unitized.

3.      **Parent-Child Relationships**. The parties shall undertake reasonable efforts to preserve parent-child relationships within a document family (the association between an attachment and its parent document). The child document(s) should be consecutively produced

immediately after the parent document, and the family relationship should be produced in the BegAttach and EndAttach fields. The parties agree to meet and confer to address situations in which a party believes that parent-child relationships have not been adequately preserved.

4.      **Optical Character Recognition**. The producing party shall provide optical character recognition ("OCR") text files for all documents originating as paper. Text files should be in Unicode [UTF-8] format. All references below to 'Unicode' are synonymous with UTF-8. To the extent that documents have been run through OCR software, the full text shall be provided on a document-level basis in an appropriately formatted text file (.txt) that is named to match the first Bates number of the document. Text files should be provided in a "Text" folder. To the extent that a document is redacted, the text files should not contain the text of the redacted portions.

5.      **Unique IDs**. Each TIFF image should have a unique filename, which corresponds to the Bates number of that page. The filename should not contain any blank spaces and should be zero-padded (*e.g.*, ABC0000001). A single prefix with a fixed width should be used for each producing party along with a fixed-width numerical portion. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production. Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a party produces in the litigation.

6.      **Data Load Files**. Documents shall be provided with: (a) a delimited data file (.dat, .csv, or .txt) [Unicode]; and (b) an image load file (.lfp, .opt, or .dii), as detailed in Appendix 1. Nothing in this Order will limit the parties from discussing load file changes throughout the course of the litigation.

## II.    Preservation and Collection of ESI

The Parties shall be responsible for taking reasonable and proportional steps to preserve potentially relevant documents and ESI within their possession, custody, or control.

The Parties shall document and disclose their collection methodologies and confirm that any selected methodology will not overwrite or alter preexisting metadata such as file creation date or last modified date.  If collected documents are moved at any time from one system to another (i.e. document processing to litigation database), the producing party shall document all processes and related data used to ensure that no ESI was lost in the transfer of documents. Additionally, the Parties will determine, record, and disclose all sources of relevant information for preservation and collection consistent with their duty to assess the scope of preservation of potentially relevant ESI, documents, and tangible things.

Pursuant to this Protocol, the Parties have no obligation to preserve, collect, or produce the following information or data sources if they are not kept in the ordinary course of business:

a.    "Deleted," "slack," "fragmented," or "unallocated" data on hard drives;

b.    Random access memory (RAM) or other ephemeral data;

c.    Strictly temporary or ephemeral online access data such as temporary internet files, cache, etc.;

d.    Backup tapes or media which are not readily accessible because of undue burden or cost;

e.    Legacy data contained on computers or information storage systems or software that is no longer used or supported by a Party and no longer reasonably accessible;

f.    Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a

laboratory report; and

g.     Known junk files from the NIST list or unimportant data files;

## III.     Production of ESI

1.     **TIFFs.**  Documents should be produced as single-page, black and white, group IV TIFFs imaged at 300 dpi. If an original document contains color, the document should be produced in JPG image format. Whenever it is practical to do so, the document's original orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape).  Bates numbers, confidentiality designations (in accordance with the protective order governing the case), and redactions (to the extent they are necessary) should be burned into the image.  TIFF image files should be provided in an "Images" folder.

2.     **Extracted Text Files**.  For each document, a single Unicode text file shall be provided along with the image files and metadata.  The text file name shall be the same as the Bates number on the first page of the document.  File names shall not have any special characters or embedded spaces.  Electronic text must be extracted directly from the native electronic file to the extent reasonably available unless the document is an image file or contains redactions.  In these instances, a text file created using OCR should be produced in lieu of extracted text.

3.     **Unique IDs**.  Each image should have a unique file name, which corresponds to the Bates number of that page.  The file name should not contain any blank spaces and should be zero-padded (*e.g.*, ABC-0000001), taking into consideration the estimated number of pages to be produced.  If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production.  Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a party produces in the litigation.

4.      **Parent-Child Relationships**.  The relationship between attachments, enclosures, embedded files, linked files or documents (not including hyperlinks to Internet accessible and available web pages), and/or exhibits to any parent document shall be preserved.  The child-document(s) should be consecutively produced immediately after the parent-document.  The Parties agree that if any part of a document is responsive, then the entire document will be produced (except in the case of documents that are part of families from which items have been withheld or redacted on the basis of responsiveness, privilege or other protection from disclosure).  The Parties shall take reasonable steps to ensure that parent-child relationships within a document family are preserved, particularly for emails (including email attachments and linked documents in emails). Each document produced by a Party shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file, and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.  In the case of standalone documents without attachments, the Beg/EndBates and Beg/EndAttach values will be identical.

5.      **Native Format**.  Excels, delimited text files, audio files, video files, and additional documents of a type which cannot be reasonably converted to useful TIFF images shall be produced as native files along with extracted text and metadata identified in Appendix 2.  Natively produced documents should include a Bates-numbered TIFF image placeholder stating that the document has been produced in native format.  The producing party shall produce an overlay to ensure that the "NativeLink" entry in the data load file indicates the relative file path to each native file in such production, and all extracted text and applicable metadata fields set forth in Appendix 2.

The requesting party at its discretion may ask the producing party for certain other documents and/or databases initially produced in TIFF format to be produced in their native format. The requesting party shall identify the documents by Bates numbers and the documents should be produced in their unaltered native format. The producing party shall not unreasonably deny such requests. To the extent the producing party refuses any requests, the Parties shall meet and confer concerning any request for native files before seeking Court intervention. Where the producing party agrees to reproduce documents in native format, documents and overlays shall ordinarily be produced within 21 days of a request unless the Parties agree to a different time period due to technical difficulties or size of production. In the event the Court orders a producing party to produce documents in native format, documents and overlays shall be produced within 21 days of the order unless the parties agree to a different time period or if the Court orders a different time period.

To the extent that the information in a native file must be redacted on privilege grounds, the producing party may produce TIFF images with burned-in redactions in lieu of a native file and TIFF placeholder image. The producing party shall make reasonable efforts to ensure redacted TIFF images of native files are legible and usable. If redacting TIFF images and to the extent that any of the following can be automated, the producing party, or its e-discovery vendor, should make reasonable efforts to: (1) reveal hidden rows, columns, or sheets prior to converting the document to TIFF; (2) clear any filters that may conceal information; (3) adjust column widths and row heights to avoid numbers or other text content being truncated or appearing as "########"; (4) ensure that column and row headings print; (5) ensure that the tab name appears in the header or footer of the document; (6) process comments so that they are produced at the end of the spreadsheet; (7) identify the operation of any macros in the spreadsheet; and (8) process

spreadsheets so that they print across then down.  If good cause exists, the requesting party may ask the producing party to manually undertake the foregoing for certain documents identified by Bates number by the requesting party to the extent the document was originally produced with concealed information.  The producing party shall not unreasonably deny such a request.

9.　　　　**Chat and Instant Messaging Software**.  The Parties will make efforts to ensure that relevant documents and information are collected from chat and instant messaging software, including Slack. The Parties shall meet-and-confer as necessary to discuss the use of chat and instant messaging system, how best to identify relevant documents therein, and the proper format of production.

10.　　　　**Social Media.**  To the extent relevant documents exist on social media websites, the following process of production is required:

   a.  LinkedIn: Export out profile to a PDF and then OCR it to make the PDF searchable.

   b.  Facebook/Twitter/Instagram: Capture information in screenshots and convert same into searchable PDFs.

   c.  All other potentially relevant social media: The Parties agree to meet and confer regarding the production parameters for any additional potentially relevant social media.

11.　　　　**Tracked Changes, Comments, and Presenter Notes**. To the extent that a non-native electronic document contains tracked changes or comments, the document should be imaged showing tracked changes and comments, and the produced text should include the comments.  To the extent that a slide deck includes presenter notes, the document should be imaged such that the presenter notes appear.

12.    **Dynamic Fields**. Files containing dynamic fields such as file names, dates, and times will be produced showing the field code (e.g., "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

13.    **Password Protected Files**.  The producing party shall produce passwords for any password-protected files to the extent the passwords are reasonably available.

14.    **Embedded Documents.**  If reasonably possible, embedded ESI documents (*e.g.* a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records and related back to the respective top level parent document (*e.g.*, standalone file, email message, *etc*.) via the BegAttach and EndAttach fields referenced in Appendix 2.  Related documents will be produced within a continuous Bates range.  Nothing in this paragraph will require a party to extract or produce information from an embedded or attached internet link.

15.    **Data Load Files**.  Electronic documents shall be provided with: (a) a delimited data file (.dat, .csv, or .txt) [Unicode] and (b) an image load file (.lfp, .opt, or .dii) as detailed in Appendix 1.  Nothing in this Order will limit the parties from discussing load file changes throughout the course of the litigation.

16.    **Metadata**.  Appendix 2 sets forth the metadata fields to be produced to the extent that metadata exists for a particular document subject to the limitations discussed below.  To the extent that metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, nothing in this ESI Protocol shall require any party to extract, capture, collect or produce such data.

15.    **Deduplication**.  Documents should be deduplicated at the family-group level provided that the producing party identifies any additional custodians in an Additional Custodian field and

additional file paths in an Additional Filepath field.  Near duplicate documents may not be deduplicated. Additionally, hard copy documents may not be eliminated as duplicates of responsive ESI if there is anything written on the hard copy document that makes it different from the electronic copy and should be considered as a near-duplicate.

## IV.    Production of Databases and Other Structured Data

If a database or other source of structured data contains responsive information, the Parties should meet and confer to determine a mutually agreeable format for producing responsive information from the database or other structured data.  Before meeting and conferring, the producing party will provide the following information about the database or structured data to the receiving party.

Database Name;

A list of the fields contained within the Database;

Software Platform;

Software Version;

Business Purpose;

Users;

Size in Records;

Size in Gigabytes (GB);

A List of Standard Reports; and

## V.    Production of Audio and Video Recordings

Audio and video recordings will be produced in native format and will be identified using a single Bates number.  The parties agree to meet and confer if additional relevant information not provided by the native format is required by the receiving party.

### VI.  Processing of Third-Party Documents

**1.** A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this ESI Protocol as an attachment to the subpoena and request that the non-party produce documents in accordance with the specifications set forth herein.

**2.** The Issuing Party may request that the non-party simultaneously produce documents to the Issuing Party and all other parties. If the non-party produces documents only to the Issuing Party, to the extent practical given the data volume, productions by a non-party should be produced by the Issuing Party to all other parties within seven days.

**3.** Nothing in this ESI Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or nonparties to object to a subpoena.

### VII.  Miscellaneous Provisions

**1.** The following specifications govern the production of all documents regardless of source, unless otherwise noted in this ESI Protocol.

**2. Custodian or Originating Source**. The custodian or originating source shall be identified in the Custodian field of the database load files. Documents found in the possession of a natural person (or on a natural person's hardware or storage media) should be produced in such fashion as to identify the natural person. Documents found in the possession of a department, group, entity, or other common facility (*e.g.*, office, file room, archive, network storage, file share, back-up, hard drive, *etc.*) should be produced in such a fashion as to identify the department, group, entity, or facility. A producing party shall use a uniform description of a particular custodian across productions.

3.    **No designation**.  The Producing Party shall identify the source(s) of ESI that contain responsive documents, as required elsewhere herein.  Productions need not include an indication of the document request(s) to which a document may be responsive.

4.    **Foreign Language**.  Foreign language text files and metadata should be delivered with the correct encoding to enable the preservation of the document's original language.

5.    **Dates**.  All documents shall be processed so as to show the date and time in UTC or Eastern Standard Time (using the UTC Remove option).

6.    **Search Terms and Technology Assisted Review**.  The parties will meet and confer relating to the process of searching for documents responsive to discovery, including, specifically, whether the Parties will utilize search terms or technology assisted review ("TAR").  The Parties will further meet and confer and will identify and discuss the custodian and non-custodial sources that will be included as part of the document collection.  The Parties must identify any sources of information responsive to specific discovery requests that the Party contends is not reasonably accessible due to burden or cost in compliance with Fed. R. Civ. P. 26(b)(2).

7.    **Production Media**.  The preferred means of producing documents is via secure FTP or secure file share.  However, documents may also be produced via CD, DVD, flash drive, or hard drive if (a) the size of the production exceeds the size limitations applicable to the producing party's secure FTP or file share or (b) if the interest of preserving the confidentiality of the information produced outweighs the speed and efficiency of producing documents via secure FTP or secure file share.  To the extent possible, physical media should be write-protected before it is produced and should be sent via overnight mail delivery to the U.S. address requested by the receiving party.  Whether produced via secure FTP, file share, or physical media, produced files should be combined into a compressed file such as .zip, .rar, *etc*.  The compressed file should be

named so as to indicate the producing party, the date of the production, and the sequence of the production (*e.g.*, "Sturm, Ruger & Co. Production 20230401-001").  If the production is made using physical media, the media should be labeled to include (a) text referencing that it was produced in *Jones v. Sturm, Ruger & Co., Inc.*, Court File No. 3:22-cv-01233; (b) the Bates Number range of the materials contained on the media; (c) and the filename(s) of the compressed file(s) contained on the media such as the example included above.

      **8.**    **Privilege Logs**.  Should any documents or information be withheld by either Party on the basis of attorney/client privilege, work-product privilege, a joint-defense privilege or any other applicable privilege, immunity or protective doctrine, the Party withholding the document or information will provide a privilege log that is compliant with the Eastern District of Virginia's Local Rules.

      **(1)** When using a traditional privilege log, the parties will state the following information separately for each document or portion of a document withheld:

    (a) a sequential number associated with each Privilege Log record (*i.e.*, a privilege log ID number);

    (b) the specific privilege, protection, or immunity claimed;

    (c) the type of document or ESI (*e.g.*, e-mail, memo, letter, presentation, *etc.*);

    (d) the date of the document or ESI, which may be extracted in an automated fashion via available metadata;

    (e) the author(s) of the document(s) or ESI, which may be extracted in an automated fashion via available metadata;

    (f) the sender(s) of the document(s) or ESI, including each recipient(s), addressee(s) (including "cc" and "bcc" recipients) of the document, which may be extracted in an automated fashion via available metadata;

    (g) the custodian(s) of the document or ESI;

    (h) the Bates number range of the document, if applicable;

(i) the general subject matter of the document or ESI which provides a description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the general subject matter of the document and the basis of the claim of privilege or immunity; and

(j) the identification of all attorneys or law firms who played a role connected with the privileged nature or withholding of the document or ESI.

**(2)** If a claim of privilege applies to only a portion of a document, the document should be produced, and the portion claimed to be privileged obscured and stamped with redaction text reflecting the specific claim asserted.

**(3)** Privilege logs shall be produced in spreadsheet (.xlsx) or equivalent native format.  The following documents presumptively need not be included on a privilege log:

(a) communications exclusively between a Party and its outside counsel regarding the litigation;

(b) work-product created by outside counsel, or where applicable by an agent of outside counsel (other than a Party), that constitutes or reflects legal advice to the producing party or reveals the thought process of its counsel, which has not been shared with third parties (apart from other agents assisting in the preparation of that advice); and

(c) documents not responsive to the requesting Party's substantive document requests.

**(4)** The obligation to provide a log of privileged or work product materials presumptively shall not apply to: (a) Attorney work product created by Outside Counsel for the Parties regarding this litigation created after the filing of the first complaint; (b) Internal communications within Outside Counsel for the Parties regarding this litigation created after the filing of the first complaint; (c) Communications between Outside Counsel and the party they represent regarding this litigation after the filing of the first complaint. The parties agree to confer regarding other categories of information that may be excluded from logging requirements.

9.    **Replacement Productions**.  Any replacement production will be transmitted with a cover letter or email to identify the production as a replacement and cross-reference the BegBates and EndBates of the documents being replaced.  If the replacement production is being transmitted by physical media, the media shall include the phrase "Replacement Production."

**10. Inability to Produce Metadata**. If the producing party is unable to produce metadata for a particular field, it will provide an explanation of that inability prior to production and the parties will meet and confer as necessary.

**11. Encrypted Data**. To the extent data is encrypted before it is produced, the producing party shall contemporaneously transmit the credentials necessary to decrypt the data.

**12. Non-Waiver**. Nothing in this ESI Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents. Production of privileged documents, work product, or other protected documents is shall not act as a waiver of the privilege or protection, but instead shall be treated as specified in the Stipulated Protective Order entered in this litigation.

**13. Protective Order**. All productions are subject to the Protective Order entered by the Court in this Action.

**14. Good Faith Resolution of Disputes**. The parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this ESI Protocol. If a producing party, notwithstanding their good faith efforts, cannot comply with any material aspect of this ESI Protocol or if compliance with such material aspect would be unreasonable, such Party shall inform the requesting party in writing a reasonable time before the date of production as to why compliance with the ESI Protocol is impossible or unreasonable. No Party may seek relief from the Court concerning compliance with the ESI Protocol unless it has conferred in good faith with the affected parties.

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

Dated: March 5, 2026                 Respectfully submitted,

                                     By:  */s/ Kate M. Baxter-Kauf*
                                     Kate M. Baxter-Kauf (*Pro Hac Vice*)
                                     Karen Hanson Riebel (*Pro Hac Vice*)
                                     Maureen Kane Berg*
                                     **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
                                     100 Washington Avenue South, Suite 2200
                                     Minneapolis, MN 55401
                                     Tel.: 612.339.6900; Fax: 612.339.0981
                                     kmbaxter-kauf@locklaw.com
                                     khriebel@locklaw.com
                                     mkberg@locklaw.com

                                     Steven T. Webster (VSB No. 31975)
                                     **WEBSTER BOOK LLP**
                                     300 N. Washington Street, Suite 404
                                     Alexandria, VA 22314
                                     Tel.: 888.987.9991
                                     swebster@websterbook.com

                                     Lee Adair Floyd (VSB No. 88459)
                                     **FLOYD LAW, PC**
                                     626 E. Broad Street, Suite 300
                                     Richmond, Virginia 23219
                                     Telephone: (804) 529-0000
                                     Facsimile: (804) 529-0009
                                     lee@floydpc.com

                                     *Plaintiffs' Co-Lead Interim Liaison Class Counsel*


                                     M. Anderson Berry (SBN 262879)
                                     Gregory Haroutunian (SBN 330263)
                                     **EMERY REDDY, PC**
                                     600 Stewart Street, Suite 1100
                                     Seattle, WA 98101
                                     916.823.6955 (Tel)
                                     206.441.9711 (Fax)
                                     anderson@emeryreddy.com
                                     gregory@emeryreddy.com

                                     *Plaintiffs' Co-Lead Interim Class Counsel*

Gayle M. Blatt (*Pro Hac Vice*)
P. Camille Guerra (*Pro Hac Vice*)
**CASEY GERRY SCHENK**
**FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Tel.: 619.238.1811; Fax: 619.544.9232
gmb@cglaw.com
camille@cglaw.com

Gary M. Klinger (*Pro Hac Vice*)
**MILBERG COLEMAN BRYSON**
 **PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel.: 866.252.0878
gklinger@milberg.com

David K. Lietz*
**MILBERG COLEMAN BRYSON**
 **PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052
Tel.: 866.252.0878; Fax: 202.686.2877
dlietz@milberg.com

*\*pro hac vice* application forthcoming

*Attorneys for Plaintiffs and the putative Class*

/s/ Benjamin F. Dill
Benjamin F. Dill (VSB #93000)
MCANGUS GOUDELOCK & COURIE LLC
120 Eastshore Drive, Suite 200
Richmond, VA 23059
(804) 944-2992
benjamin.dill@mgclaw.com

/s/ Claudia D. McCarron
Claudia D. McCarron (admitted pro hac vice)
Richard M. Haggerty (admitted pro hac vice)
MULLEN COUGHLIN LLC
426 W. Lancaster Avenue, Suite 200
Devon, PA 19333
(267) 930-4770
cmccarron@mullen.law
rhaggerty@mullen.law

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, March 5, 2026, I caused a true and correct copy of the

foregoing motion to be filed with the Clerk of the Court for the Eastern District of Virginia via the

Court's CM/ECF system, which will send notification of such filing to the counsel of record in the

above-captioned matters.

Dated: March 5, 2026

*/s/ Benjamin F. Dill*
Benjamin F. Dill (VSB #93000)
MCANGUS GOUDELOCK & COURIE LLC
120 Eastshore Drive, Suite 200
Richmond, VA 23059
(804) 944-2992
benjamin.dill@mgclaw.com

*/s/ Claudia D. McCarron*
Claudia D. McCarron (admitted pro hac vice)
Richard M. Haggerty (admitted pro hac vice)
MULLEN COUGHLIN LLC
426 W. Lancaster Avenue, Suite 200
Devon, PA 19333
(267) 930-4770
cmccarron@mullen.law
rhaggerty@mullen.law

*Counsel for Defendants*