**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

|  |  |
|---|---|
| TRINITY BIAS, JAIME CARDENAS, CHRISTOPHER HOLMES, and ROBERT SHAW, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>ELEPHANT INSURANCE COMPANY, ELEPHANT INSURANCE SERVICES, LLC, and PLATINUM GENERAL AGENCY, INC. d/b/a APPARENT INSURANCE<br><br>        Defendants. | Civil Action No. 3:22-cv-00487-JAG<br><br>**CLASS ACTION** |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'**
**MOTION TO COMPEL DOCUMENTS AND DISCOVERY COMPLIANCE**

Plaintiffs file their Motion to Compel Documents and Discovery Compliance under the mistaken belief that Defendants oppose providing or are unwilling to provide responses to Plaintiffs' discovery requests. To the contrary, Defendants were unable to produce, for technical reasons outside their control, electronically-stored documents responsive to Plaintiffs' requests. Defendants are now moving forward with reviewing and producing electronically-store, responsive, discoverable documents as they have recently become accessible. Moreover, while the electronic documents were unavailable to them, Defendants acted in good faith by re-collecting and producing those documents which were available to them, while also diligently working with e-discovery vendors to regain access to data previously collected early in  this litigation.

Accordingly, Defendants respectfully request that Plaintiffs' Motion to Compel Documents and Discovery Compliance be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

Shortly after Plaintiffs initiated this litigation in July 2022, Defendants engaged in a data mapping exercise to identify the location of data relevant to the subject matter of the litigation and then collected certain departmental files, as well as custodial data for two sets of custodians: (1) those employees and individuals involved with information technology-related policies and practices, and (2) employees and individuals involved in incident response. This data collection process took several weeks to complete and ultimately yielded approximately 20,000 Gigabytes of data (the "Collected Data"). Defendants, in anticipation of its discovery obligations, provided the Collected Data to an e-discovery vendor ("Vendor"), to be held in "cold storage" for safekeeping until review would be required.

Defendants filed their Motion to Dismiss for Failure to State a Claim and Motion to Dismiss for Lack of Jurisdiction on or about October 14, 2023. ECF No. 27. On or about June 26, 2023, the Court granted Defendants' Motion to Dismiss, which Plaintiffs appealed to the U.S. Court of Appeals for the Fourth Circuit. ECF Nos. 35, 37. The U.S. Court of Appeals for the Fourth Circuit remanded this matter. ECF Nos. 40.[1] The Parties attended a telephonic conference with the Court on February 11, 2026, and the Court issued its Initial Pretrial Order setting forth the pretrial deadlines on February 13, 2026. Plaintiffs re-served Defendants with their Requests for Production of Documents on February 11, 2026, to which Defendants provided objections on February 26, 2026, and March 16, 2026.

---

[1] On March 12, 2026, Defendants filed a Petition for Writ of Certiorari with the United States Supreme Court seeking review of the U.S. Court of Appeals for the Fourth Circuit's opinion. The Petition remains pending.

Throughout the pendency of this matter and the appeal to the U.S. Court of Appeals for the Fourth Circuit, Defendants had a good faith belief that the Collected Data was protected and would be available when needed, receiving and paying invoices for its storage throughout that time. Since the Court granted Defendants' Motion to Dismiss pursuant to Federal Rule 12(b)(1) of Civil Procedure for lack of Article III standing, the documents remained in "cold storage" so that it could be reactivated and processed in the event the case was remanded. On or about February 18, 2026, shortly after receiving the Initial Pretrial Order, counsel for Defendants contacted Vendor requesting that the documents be removed from "cold storage" and placed in a document review platform to enable evaluation, review, and document production. Declaration of Michael W. Jervis, Esq. ("Jervis Decl.") ¶¶ 3-4. Defendants communicated the pace of discovery that was required by the Court's Pretrial Order to Vendor. *Id*. ¶ 7.

During the period of time between February 18, 2026, and March 9, 2026, counsel for Defendants were in ongoing contact with Vendor regarding the status of reactivating and processing the Collected Data in order for it to be reviewed for privilege and responsiveness and produced to Plaintiffs pursuant to their discovery requests. *Id*. ¶¶ 4, 6, 10. However, delays, outside the control of and despite the diligence of Defendants, persisted.

Vendor informed Defendant that they were having difficulty in locating the data that was held in "cold storage." *Id*. ¶ 5. After they informed Defendants that it had been located, Defendants were informed of several facts that further impeded transition of the data from "cold storage" to a reviewable status: the size of the Collected Data, which required multiple days of machine time to reactivate and stand up the Collected Data, and additional technical issues such as loss of electricity and internet access at the Vendor, which further delayed the process. *Id.* ¶¶ 9-

3

10. Unfortunately, despite requests, Vendor did not provide Defendants with a reliable projected timeline as to how long it would take reactivate the data held in "cold storage." *Id.* ¶¶ 8, 10, 11.

On March 16, 2026, during a meet-and-confer to discuss the 30(b)(6) deposition topics, Defendants alerted Plaintiffs to the issues concerning access to the Collected Data which hindered Defendants' ability to evaluate and review the documents for production. At that time, the Parties discussed document production, as well as search terms and custodians, and the possibility of seeking an extension of the case deadlines to allow time to complete review and production of the requested documents. Despite recognizing the issues Defendants were faced with in reviewing the Collected Data, Plaintiffs filed the instant Motion to Compel Documents and Discovery Compliance on March 19, 2026, and did not consent to seeking an enlargement of time and amendment of the Initial Pretrial Order. Defendants' Emergency Motion for Enlargement of Time and Modification of Pretrial Scheduling Order shortly followed. ECF Nos. 56, 59.

Meanwhile, as a result of the issues experienced by Vendor, and during the process of Vendor locating and restoring the Collected Data, Defendants engaged a separate e-discovery vendor, Dauntless Discovery, to aid in the review and instructed Vendor to provide the restored data to Dauntless so review of the documents could commence without further delay. Jervis Decl. ¶ 12-13. Defendants were, then, subsequently receiving contradictory reports regarding when the Collected Data would be transferred to Dauntless – who did not receive all of the Collected Data from Vendor until March 17, 2026. *Id.* ¶¶ 14-15.

On March 23, 2026, Dauntless had completed ingesting and processing the Collected Data for review. As discussed below, Defendants had requested search terms from Plaintiffs to run against the Collected Data in the document review platform to advance the e-discovery process, as Defendants must cull through and review approximately 10.8 million documents to determine

what is responsive, discoverable information. Despite Defendants' request, however, Plaintiffs have not provided any insight into potential or requested search terms.

Throughout this process, Defendants continued working with Plaintiffs to move the discovery process forward, and accordingly, the Parties agreed to and filed an ESI Protocol and Protective Order on March 5, 2026. ECF No. 47. Additionally, Defendants and Plaintiffs continued to work toward conducting depositions of Defendants' corporate designees pursuant to Fed. R. Civ. P. 30(b)(6), agreeing to dates as Defendants continued to work through the Vendor issues that impeded access to the Collected Data. Indeed, these 30(b)(6) depositions were completed on March 25 and March 26, 2026, and Plaintiffs have noticed fact witness depositions beginning April 8, 2026.[2]

Meanwhile, as the resolution of the e-discovery process progressed, Defendants re-collected and reviewed those documents which were available to them in order to make what productions they could to Plaintiffs given the issues experienced in retrieving the Collected Data. In fact, Defendants have made document productions to Plaintiffs on March 3, 2026, March 6, 2026, March 18, 2026, March 20, 2026, March 23, 2026, March 24, 2026, and March 31, 2026 – which include all responsive "go get" documents. Moreover, since Dauntless Discovery has had access to the Collected Data, Defendants have been culling the data and set up a document review for custodial data, which Plaintiffs will receive in rolling productions. Defendants are also delivering log files to Plaintiffs, per their discovery requests.

---

[2] Plaintiffs initially noticed fact depositions to begin on April 1, 2026, then on March 31, 2026, canceled and re-noticed depositions to begin on April 8, 2026.

## ARGUMENT

Parties are entitled "to discovery any material that is relevant to any party's claim or defense, is nonprivileged, and is proportional to the needs of the case." *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*, 2019 WL 8108060, at *2 (E.D. Va. July 3, 2019) (citing Fed. R. Civ. P. 26(b)(1)). With regard to electronically stored information, "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request," and if a form is unspecified, "a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." Fed. R. Civ. P. 34(b)(2)(E). "'[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion.'" *Addax Energy SA v. M/V Yasa H. Mulla*, No. 2:17CV641, 2018 WL 10470917, at *4 (E.D. Va. Nov. 13, 2018) (quoting *Eramo v. Rolling Stone LLC.,* 314 F.R.D. 205, 209 (W.D. Va. 2016)). "'The burden of proof is with the party objecting to the discovery to establish that the challenged production should not be permitted.''' *America Science Team Richmond, Inc. v. Chan*, No. 3:22CV451, 2025 WL 4648414, at *1 (E.D. Va. Nov. 24, 2025) (quoting *Doe v. Old Dominion Univ.*, 289 F. Supp. 3d 744, 749 (E.D. Va. 2018) (citation omitted)). "District courts 'generally have broad discretion in managing discovery, including whether to grant or deny a motion to compel.'" *Addax Energy* SA, 2:17CV641, 2018 WL 10470917, at *3 (quoting *Eramo*, 312 F.R.D. at 209 (citation omitted)).

Defendants are not resisting providing responses to Plaintiffs' discovery requests; Defendants, heretofore, have been *unable* to provide responsive documents in the Collected Data in a usable form due to the data accessibility issues experienced by Vendor. Contrary to Plaintiffs' assertions, Defendants have been working diligently and in good faith to provide documents to Plaintiffs throughout the course of discovery despite those accessibility issues – while also working

6

in parallel to access, review, and produce the Collected Data that is responsive to Plaintiffs' discovery requests. Indeed, Defendants have re-collected and reviewed documents which they could identify without access to the Collected Data to make seven (7) productions. Moreover, Defendants have engaged a second e-discovery vendor to aid in reactivating and reviewing the Collected Data when it became apparent that Vendor was unable to complete this within a reasonable time. Jervis Decl. ¶¶ 12-13. Additionally, at Plaintiffs' insistence, in a show of good faith, Defendants agreed to submit corporate designees for 30(b)(6) depositions without the ability to fully prepare them with the benefit of the Collected Data. Defendants who were required to perform additional internal document searches after having gone through a lengthy collection of documents which they had no reason to believe, and could not foresee, would be inaccessible as a result of technical issues with an e-discovery vendor.

Distilled to its essence, Plaintiffs' motion asserts: (1) Defendants' responses to Plaintiffs' Requests for Production fail to produce documents or indicate a time for response; (2) Defendants' indicate that they are not withholding documents on the basis of its objections, and thus has no basis to delay production; and (3) Defendants have not provided documents related to the data privacy event, Defendants' response, network and systems or security measures. Pls.' Br. at 9-12. Plaintiffs additionally make the unsubstantiated claim that Defendants have "not sufficiently collected documents to be able to determine whether" a burden exists when, in fact, the true issue at the heart of this Motion is the technical inaccessibility of the 10.8 million documents collected which precluded Defendants from making any such determination.

Plaintiffs complain that in their responses and objections to the Requests for Production of Documents, Defendants indicate that "Defendant will be limiting its search for documents responsive to Plaintiffs' requests (1) based upon search terms, document custodians and data

locations determined in conjunction with a meet-and-confer process by the parties, and (2) in accordance with the Stipulated Protocol Governing the Production of Electronically Stored Information," and allege that this response "neither specifies a time nor is reasonable." *Id*. at 10. Plaintiffs also assert that "conditioning of production of *any documents at* all on a lengthy meet and confer process related to search terms and custodians would not be efficient in producing relevant and responsive documents. *Id.* at 11. Plaintiffs' argument essentially appears to be that, notwithstanding Defendants' attempts to schedule a meet-and-confer to discuss the accessibility of documents (and thus a viable date for production), search terms, document custodians, and locations, Defendants' conduct has not been reasonable because Defendants did not (and for reason's outside their control, could not) provide a specific date for production. Moreover, Plaintiffs claim that "Elephant's conditioning of production of *any documents at all* on a lengthy meet and confer process related to search terms and custodians would not be efficient in producing relevant and responsive documents" is belied by the facts that (1) Defendants indicated that they were not presently aware of any responsive documents that will be withheld from production on the basis of their objections, and (2) Defendants did, indeed, produce the discoverable "go-get" documents that were available to them in the course of seven document productions.

Plaintiffs' position is additionally perplexing given that Plaintiffs' acknowledge that, at the meet-and-confer that occurred earlier on March 16, 2026, Defendants indicated they could not produce documents due to accessibility issues with the Collected Data, that Defendants "did not know when they expected to produce documents" as a result, and the Parties "discussed – *and Plaintiffs thought agreed to* – a process whereby, given the time constraints of the case, Elephant would produce relevant and responsive documents expeditiously and in the order available to it, and the parties would talk about search terms or custodians simultaneously as needed from there."

8

*Id.* at 6 (emphasis added). As a result, and consistent with the language quoted, on March 16, Defendants were unable to provide an estimated date upon which a custodial production could be made and were, thus, seeking a meet-and-confer. Defendants were not intending to be intentionally obfuscatory or evasive but rather provided responses aligning with the information in their possession at the time and as communicated to the Plaintiffs earlier that day.

Likewise, Plaintiffs' argument that "Elephant indicates it is not withholding documents on the basis of its objections – so it has no basis to delay producing documents" is without merit. Pls.' Br. at 11. Defendants, in their responses and objections to Plaintiffs' Request for Production indicated they "'are not presently aware' of any documents being withheld on the basis of any objection." *Id.* at 9. At the time Defendants served their responses and objections on Plaintiffs, for reasons outside of Defendants' control, Defendants did not have access to the Collected Data and provided their responses and objections on the information known at the time – which, by definition, could not be provided on a granular level without access to the Collected Data.

Moreover, Plaintiffs, at the time of receipt of the responses and objections, were aware of the fact that Defendants were unable to access the Collected Data as a result of technical issues with the Vendor and, thus, Defendants had been unable to view the documents, let alone evaluate if they should be produced - as Defendants clearly communicated this to Plaintiffs merely hours before serving their responses and objections. *See id.* at 5-6. Again, Defendants were completely transparent with Plaintiffs concerning the Collected Data accessibility issues that they were diligently working through in good faith. Defendants do not intend to withhold all documents from the Plaintiffs, but rather, for reasons outside their control, need additional time to evaluate, review, and produce the discoverable portion of the 10.8 million documents comprising the Collected Data now that it is accessible. Indeed, this need serves as the basis for Defendants' Emergency Motion

for Enlargement of Time and Modification of Pretrial Scheduling Order to which Plaintiffs did not consent – despite claiming to have been prejudiced.

Plaintiffs' concern that Defendants have not provided documents related to the data privacy event, Defendants' response, Defendants' network and systems, and/or security measures will likewise be remedied once Defendants complete the e-discovery methodology process to the 10.8 million documents comprising the Collected Data which Defendants have already begun. Additionally, while Defendants do not dispute that Plaintiffs should (and will) receive those responsive, discoverable documents related to the April 2022 data privacy event and Defendants' response, Plaintiffs are not without information regarding the event. Defendants presented their Chief Information Officer, Kevin Whitehouse, as a 30(b)(6) witness for deposition during which he testified at length about the incident based on his direct involvement in and managerial oversight of the investigation and response.

Throughout the entire discovery process, Defendants have produced the available and accessible discoverable documents responsive to Plaintiffs' requests, and now that the Collected Data has been reactivated and processed with Dauntless Discovery and the review is underway, Defendants hope to continue to meet-and-confer with Plaintiffs to prepare a reasonable custodian production plan whereby all responsive, non-privileged, discoverable documents requested by Plaintiffs are produced on a rolling basis.

## CONCLUSION

For the reasons stated above, Defendants respectfully request Court deny Plaintiffs' Motion to Compel Documents and Discovery Compliance, and allow Defendants complete their evaluation and review of the Collected Data so that non-privileged, discoverable documents responsive to Plaintiffs' requests may be produced.

Dated: April 2, 2026                    Respectfully submitted,

                                        */s/ Benjamin F. Dill*
                                        Benjamin F. Dill (VSB #93000)
                                        MCANGUS GOUDELOCK & COURIE LLC
                                        120 Eastshore Drive, Suite 200
                                        Richmond, VA 23059
                                        (804) 944-2992
                                        benjamin.dill@mgclaw.com

                                        */s/ Richard M. Haggerty*
                                        Richard M. Haggerty (admitted pro hac vice)
                                        Claudia D. McCarron (admitted pro hac vice)
                                        MULLEN COUGHLIN LLC
                                        426 W. Lancaster Avenue, Suite 200
                                        Devon, PA 19333
                                        (267) 930-4770
                                        cmccarron@mullen.law
                                        rhaggerty@mullen.law

                                        *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, April 2, 2026, I caused a true and correct copy of the foregoing motion to be filed with the Clerk of the Court for the Eastern District of Virginia via the Court's CM/ECF system, which will send notification of such filing to the counsel of record in the above-captioned matters.

Dated: April 2, 2026                    By: */s/ Benjamin F. Dill*

Benjamin F. Dill (VSB #93000)
MCANGUS GOUDELOCK & COURIE LLC
120 Eastshore Drive, Suite 200
Richmond, VA 23059
(804) 944-2992
benjamin.dill@mgclaw.com

12