**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| TRINITY BIAS, JAIME CARDENAS, CHRISTOPHER HOLMES, and ROBERT SHAW, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ELEPHANT INSURANCE COMPANY, ELEPHANT INSURANCE SERVICES, LLC, and PLATINUM GENERAL AGENCY, INC. d/b/a APPARENT INSURANCE <br><br> Defendants. | Civil Action No. 3:22-cv-00487-JAG <br><br> **CLASS ACTION** <br><br> **DECLARATION OF MICHAEL W. JERVIS, ESQ.** |

I, Michael W. Jervis, hereby declare as follows:

1.      I am an adult over the age of 18 and competent to make this declaration.

2.      I am an attorney at Mullen Coughlin LLC and conversed with the e-discovery Vendor which had been storing Elephant data that had been previously collected, such that I am knowledgeable in the facts contained herein.

3.      On February 18, 2026, I contacted Vendor to advise the relevant individuals of the Court's scheduling order and informing them that we would need to return the data from "cold storage" to an active review status in anticipation of likely productions.

4.      Vendor personnel responded the same day and stated they should be able to assist with the request "without issue."

5.    Vendor shared a belief that the relevant data had been returned to Elephant via counsel, even though it was later confirmed Vendor had been continuing to store it in their facility.

6.    I then checked in with Vendor over the course of the following week for updates, and was told on February 26, 2026, that absent a significant change in circumstances, Vendor "can pick right up where we left off" in 2023.

7.    During these discussions, I communicated the pace of discovery required by the Court's Pretrial Order.

8.    Vendor informed me that they were reactivating the data and generating a report of the exact data held in storage.

9.    Vendor further informed us they experienced a complete electrical power and Internet outage on March 3, 2026

10.    Over the ensuing two weeks, I urged Vendor on several occasions for updates and was repeatedly told that the data was being processed and received indications the delay was simply a result of the volume of data.

11.    Despite repeated requests for estimations of completion time, Vendor personnel responded that they could not provide a firm estimate for technical reasons.

12.    In light of Vendor's now clear difficulties with locating and processing the data back into active storage, Mullen Coughlin began the process of retaining a new e-discovery vendor, which promised the ability to handle the data in a more expeditious fashion.

13.    My colleague David Moncure, Esq., contacted Dauntless Discovery to begin the process of getting them involved and providing the data to them.

14.    Due to the volume of data the fastest method of transferring the data was deemed to be storing it on physical media and shipping that physical media via FedEx.

15.    Eventually, Vendor shipped the physical media to Dauntless Discovery on March 16, 2026, which Dauntless received on March 17, 2026.

The foregoing declaration is made under penalty of perjury, and is true and correct to the best of my knowledge and belief.


Dated: April 2, 2026                    */s/ Michael W. Jervis, Esq.*_____
                                        Michael W. Jervis